## THE AMERICAN INSURANCE COMPANY OF CHICAGO ILLINOIS v. ISAAC STOY.

*Insurance—Installment notes—Revival of void policy—Revocation by Commissioner of Insurance of authority to do business.*

An insurance company cannot recover against a policy-holder on an installment note of which the installments are to be paid in advance, where the policy stipulates that so long as an installment remains due and unpaid, the policy shall be null and void as to any losses occurring during the period of default in payment.

A written application for insurance, the policy issued thereon, and the note given by the assured in payment, are parts of the same transaction and should be construed together in determining the rights of the parties.

The charter of a non-mutual insurance company is not binding on the assured unless the contract of insurance provides that it shall be.

Where a policy of insurance provides that in case of default in paying in advance the annual installments of a note given for the whole premium, the policy shall be null and void until payment is made, the insurance is not to be construed as for a term of years, but as an annual insurance renewable every year for a period not exceeding such term.

Risk is essential to the right to recover premiums.

In case of loss under an absolute insurance for a term of years, the company need not return anything as "unearned premium," and may recover on an unpaid note given for the premium. But where the insurance is on the installment plan and the policy is to be void so long as there is any default in the advance payment of an installment, it can not recover on a note given for successive installments of the premium.

A contract made void on the occurrence of a specified contingency, may sometimes by agreement be revived by the occurrence of another contingency or by the subsequent conduct of the parties.

Where the Commissioner of Insurance has revoked the authority of a foreign insurance company to do business within the State, it cannot thereafter recover on installment notes upon which, by the terms of its policies, payments fall due in advance.

Error to Branch.   Submitted June 20.   Decided July 3.

41 MICH.—49.

ASSUMPSIT.  Plaintiff brings error.

*Charles N. Legg* and *G. V. N. Lothrop* for plaintiff in
.error.   When an insurance policy declares that it "is
made and accepted upon the above express conditions,
and the charter of this company, which charter is to be
resorted to and used to explain the rights and obliga-
tions of the parties hereto, in all cases not herein other-
wise provided for, and which is hereby made a part of
this policy," the parties to the contract of insurance
adopt the provisions of the charter as part of their con-
tract, *Marshall v. Columbian Mut. F. Ins. Co.*, 27 N. H.,
157; *Fabyan v. Union M. F. Ins. Co.*, 33 N. H., 203;
*Smith v. Bowditch M. F. Ins. Co.*, 6 Cush., 448; Angell
on Ins., § 14; 1 Phillips Ins., § 70; *Bronson v. Green*,
Walk. Ch., 56; *Adams v. Hill*, 16 Me., 215; *Jennings v.
Chenango County Mut. Ins. Co.*, 2 Den., 75; *Egan v.
Mut. Ins. Co., of Albany*, 5 Den., 326; *Battles v. York
County Mut. F. Ins. Co.*, 41 Me., 208; *Williams v. N. E.
Mut. F. Ins. Co.*, 31 Me., 219; *Philbrook v. N. E. Mut.
F. Ins. Co.*, 37 Me., 137; *Houghton v. Manufacturers' Mut.
F. Ins. Co.*, 8 Met., 114; *Farmers' Ins. etc. Co. v. Snyder*,
16 Wend., 492; *Burritt v. Saratoga County Mut. F. Ins. Co.*,
5 Hill, 188; *Sheldon v. Hartford F. Ins. Co.*, 22 Conn.,
235; *Le Roy v. Market F. Ins. Co.*, 39 N. Y., 90; *Pierce
v. Empire Ins. Co.*, 62 Barb., 636; *Kennedy v. St. Law-
rence County Mut. Ins. Co.*, 10 Barb., 285; *Draper v.
Charter Oak F. Ins. Co.*, 2 Allen, 569; *Magoun v. Lapham*,
21 Pick., 135; *Amer. Ins. Co. of Chicago v. Gallagher*, 50
Ind., 209; 2 Phil. Ev. [5 Am. ed.], 620-6, n. 514; *Saw-
yer v. Hammatt*, 15 Me., 40; *McEwan v. Ortman*, 34
Mich., 325; members of a mutual insurance company
are bound to know its rules though not recited in the
policy, Bliss on Life Insurance, 766; *Susquehanna F.
Ins. Co. v. Perrine*, 7 W. & S., 348; *Mitchell v. Lycoming
F. Ins. Co.*, 51 Penn. St., 402; *Diehl v. Adams County
M. F. Ins. Co.*, 58 Penn. St., 443; *Coles v. Iowa State
M. F. Ins. Co.*, 18 Ia., 425; *Woodfin v. Asheville M. F.*

*Ins. Co.*, 6 Jones (Law), 558; *Walsh v. Ætna Life Ins. Co.*, 30 Ia., 133; a provision in the charter of a foreign mutual fire insurance company, that in case of a default in the payment of an assessment upon a deposit note, an action might be brought for the whole note, was held enforceable in Massachusetts, *Jones v. Sisson*, 6 Gray, 288; the provisions of the charter of the American Insurance Company of Chicago are enforceable in Illinois as provisions of a public act, and should be in Michigan under principles of inter-State comity, *Thompson v. Waters*, 25 Mich., 214; *Bank of Augusta v. Earle*, 13 Pet., 589; Story Confl. Laws, §§ 29, 38; 2 Pars. Cont., [4 ed.] 82; *Merrick v. Van Santvoord*, 34 N. Y., 208; *Merrick v. Brainard*, 38 Barb., 580; *McAllister v. Smith*, 17 Ill., 328; *Payson v. Withers*, 5 Biss., 278; *Hoyt v. Thompson*, 5 N. Y., 340; under a contract of insurance with the American Insurance Company the policy holder's neglect to pay installments on his note as they fall due does not discharge him from liability to pay them, *Williams v. Albany City Ins. Co.*, 19 Mich., 451; *Amer. Ins. Co. v. Henley*, 60 Ind., 515; *American Ins. Co. v. Klink*, 65 Mo., 78; where the risk has once begun to run on insurance, the premium is earned and there can be no apportionment or return of any part of it, 2 Marshall on Ins., Bk. 1, ch. XVI., § 1; 2 Phil. Ins., §§ 1819, 1820; 2 Arnould Ins., 1210; Ellis on Insurance, 24; Flanders on Insurance [1st ed.], 154; May on Ins., § 567; Bliss on Life Ins., § 423; Hughes on Ins., 335; Park on Ins., 367; Angell on Ins., § 399; *Tyrie v. Fletcher*, Cowp., 666; *Lorraine v. Tomlinson*, 2 Doug., 585; *Bermon v. Woodbridge*, 2 Doug., 781; *Columbian Ins. Co. v. Lynch*, 11 Johns., 240; *Holmes v. United Ins. Co.*, 2 Johns. Cas., 329; *Annan v. Woodman*, 3 Taunt., 299; *Taylor v. Lowell*, 3 Mass., 343; *Fulton v. Lancaster* [Ohio] *Ins. Co.*, 7 Ohio, 353. The contract of insurance in this case is not for a single year, with privilege of renewal from year to year, but is an entire contract of assurance for life with premiums payable in

annuities, *N. Y. Life Ins. Co. v. Statham*, 93 U. S., 30; a contract that has become absolutely null and void can only be revived by a new contract, *N. Y. C. Co. v. Watson*, 23 Mich., 487.

*Loveridge & Barlow* for defendant in error.

MARSTON, J. This was an action of assumpsit brought to recover upon a promissory note. The case is similar in its facts to *Yost v. Am. Ins. Co.* 39 Mich.,    ; and under ordinary circumstances we should not consider a re-examination of the questions raised necessary. As new and it is said important facts are presented in the record which it is claimed bring this case within the decision of this court in *Williams v. Albany City Ins. Co.*, 19 Mich., 451, and as this is said to be a test case and will determine the rights of parties in a large number of claims awaiting the result of the present, we have deemed it best to consider again carefully the several questions raised so that the rights of all parties under the law might be fully protected.

At the very outset of our examination questions arise concerning the true nature and character of the contract entered into between these parties. It is always unfortunate when in the preparation of instruments intended for. general use words of doubtful import or meaning are inserted, and which require a construction different from the ordinary legal sense attached thereto, and from what the parties may have understood, in order to protect the interests of the party preparing and issuing such instrument. This is especially true in cases where there was no necessity for using such language. When it is the clear intention that a policy of insurance issued shall on default of payment of the premium be suspended during the period of such default, and to revive from and after payment, more apt and proper words could be used to express such intention than those used in this case. We do not, however, desire to rest the conclusion in this case upon any narrow or technical view,

and shall therefore pass all such matters for the present.

The written application for insurance, the policy issued thereon, and the note given by the assured, being all parts of but one and the same transaction, must be resorted to and treated as but one instrument for the purpose of ascertaining and determining the rights of the parties. Treating them as such, we must endeavor to construe and harmonize their several and conflicting provisions so far as possible in the light of well settled legal principles. What was the policy issued in this case? Was it a policy for one year which might be renewed at the expiration thereof yearly for a period not exceeding in all five years, or was it an absolute policy of insurance for five years with a premium payable in yearly installments? These questions must be answered, not by a resort to and reliance upon any particular provision, but from an inspection of the entire instrument.

The written application made was for insurance against loss "for the term of five years from the 12th day of August, 1875."

By the policy the American Insurance Company in consideration of $6.10 cash premium and an installment note, insured certain property and agreed to make good such loss as should happen by fire "during the term of five years" commencing August 12, 1875, and terminating August 12, 1880.

These are the only provisions to which our attention has been called, or which we have been able to discover, in favor of the policy being one absolute for five years. If these provisions stood alone, there could be no doubt as to the term; but like many other apparently clear and absolute provisions contained in this agreement, subsequent provisions change, modify or control them.

In the application, the valuation of the property, the sum to be insured, and the rate are given in separate columns. The latter is fixed at sixty cents. This rate is but for one year. The amount insured is $1,016. The

first installment payable in cash is in accordance with the rate, $6.10. The installment note is given for $24.38. The maker thereof, the assured, promises therein to pay the company August 1st, 1876, $6.10, and a similar sum August 1st, 1877; also on August 1st, 1878, $6.09, and a like sum August 1st, 1879. In the application it is stated that "if any installment upon the premium shall remain due and unpaid thirty days, then the policy issued upon the application *in consideration of such installment* shall be null and void until the same is paid."

By the terms of the policy it is "expressly provided and mutually agreed that if default shall be made by the assured in the payment of any installment of premium upon the installment note given for this policy for the space of thirty days after such installment shall become due by the terms of such note, then this policy shall thenceforth be null and void, and this company shall not be liable to pay any loss happening during the continuance of such default in the payment of such installment; but on payment by the assured or his assigns, of all installments of premium due under this policy or upon the installment note given therefor, the liability of this company under this policy shall revive and this policy be in force as to all losses happening after such payment unless this policy shall be inoperative or void from some other cause. When a promissory note is given by the assured for the cash premium, it shall be considered a payment of such premium, provided such note is paid at or before maturity; but if such note or any part thereof shall remain unpaid and past due more than thirty days at the time of any loss or damage, then this company shall not be liable to pay such loss or damage happening during such default, and no attempt to collect such note or any installment of premium due upon the installment note aforesaid, whether by legal process or otherwise, shall be deemed a waiver of any of the conditions of this policy, or have the effect to revive this policy; but upon payment by the assured of the full amount of such note or installment, as the case may be, and all costs that may have accrued, then this policy shall be in force as to losses happening thereafter, unless inoperative or void from some other cause."

It will thus be seen that these several sums or installments of premium are fixed by the sum insured and the

yearly rate of sixty cents on each one hundred dollars, and that no allowance whatever is made by way of interest, as is usual where credit is given, because of the premium not all having been paid at the time the policy was issued, and the note in terms is "without interest."

We have therefore an application fixing a rate by which a yearly premium may be ascertained, which recognizes the fact that an "installment note for $24.38" is to be given; which provides that if default be made in the payment of any installment, the policy issued in consideration of such installment shall be null and void, and the policy in like terms provides that it shall become null and void, or as now claimed, suspended after thirty days from the expiration of the first year in case the second installment is not paid, and so of each year and installment thereafter.   Each installment of premium, if paid when due, is a payment according to the rate agreed upon for one year, and is intended to be a payment due at the commencement of such year and to continue the policy in force for that year. These provisions are inconsistent with the clause declaring the insurance to be for a term of five years.   It is not in the first instance for such a term; it may be for but one year:   a destruction of the property insured within the year, and inability to collect the second installment would render the insurance at an end, unless in the second case mentioned revived as hereafter mentioned.   True, the policy may run for five years, if there is no loss in the meantime and the premiums are paid.   So a lease might be made for one year, to be renewed or extended from year to year, for a period not exceeding five years, on prompt payment of an annual rent in advance.   Yet such would not be a lease for five years.   These provisions, when taken together, mean that a yearly policy has been issued upon the installment plan, to run for a period not exceeding five years.

Let us, however, look at some other important provi-

sions and considerations and see what light they will throw upon this question. The policy contains this provision: "This company reserves the right of cancelling this policy at its election, by paying to the assured the unearned premium, if any there be."

What unearned premium and how shall the amount be ascertained? It was urged upon the argument, and also in the brief of counsel in *American Ins. Co. v. Reed*, 40 Mich., 622, to which we were referred, that it is an insurance for an entire term of five years, for a stipulated amount of premium, which for the accommodation and convenience of the assured, instead of being all exacted in advance, was made payable in yearly installments; that there was no provision in the contract making any installment of premium specifically applicable to any portion of the risk; that the last installment is as much a part of the consideration of the first year's insurance as it is of any other part of the term; that the period of the insurance is one entire term and the stipulated premium is one entire premium; that neither is divisible or capable of being made specifically applicable to any particular portion of the other; and that the right of the company to the fund represented by the note, after the note has matured, is precisely the same as it would have been had the entire premium been collected at the date of the policy. And upon this a farther argument was based, supported by numerous authorities, that where the insurance has once attached, which is on the delivery of the policy, so that the risk has commenced to run, though for never so short a period, there can be no apportionment or return of the premium.

Assuming the argument advanced by counsel to be correct, what would the company return as unearned premium on cancelling the policy before the full period of five years had run? If the policy was for one entire term, and the premium one entire premium, and if when once the insurance attached and the risk commenced to

run, there could be no apportionment or return of the premium, because all earned, we think upon such a theory the amount returned would be easily counted.

But if this clause in the policy providing that the unearned premium shall be returned in case the company cancels the policy, means as we suppose it does, a return of that portion of the premium applicable to the time not covered by the risk, yet the question remains how shall the amount to be returned be ascertained. If the policy has run six months, will the company return nine-tenths of the whole five years' premium, although not all paid, retain the note and afterwards collect the same as it should become due? Or would it return one-half the cash premium received for the first year's insurance and surrender up the note for cancellation?

Or take another case that might arise under plaintiff's construction of the agreement. The premium for the first year is paid in cash at the date of the policy, the installments for the subsequent years are not paid as they become due, and during such default the policy, by its terms, is "null and void" or, as claimed "suspended," so that during such default the company has run no risk of incurring any liability on account of any loss that might have happened during such period of suspense. In the fifth year the company brings suit and all four installments are recovered and received by the company, with interest on each from the time they severally became due. The company thereupon cancel the policy under the clause already quoted. What in such a case would be the unearned premium the company would be bound to return? And if it should return the portion applicable to that part of the five years unexpired when the judgment became satisfied, what consideration and what security would it have given for the premium retained covering the period the policy was suspended?

Let us farther by way of illustration suppose another case quite likely to occur where parties are insured upon

this plan. During the first year there is a total loss of the property insured and the company pays the amount of such loss,—can it afterwards retain the note and collect the subsequent installments as they severally become due thereon, or would all become due at the time of the loss, or should the company then treat the insurance as at an end and surrender up the note? These questions, to our minds, are not difficult to answer. Under similar circumstances, where a five year policy had been issued for one entire cash premium, the company would be under no legal or moral obligation to return any part of the premium, no matter how short the period after the delivery of the policy a loss had occurred. Or if a note were given in lieu of cash, not due or paid at the time the loss occurred, the company, under an absolute five year policy, might collect the same. In this case we think it very clear the company could not in like manner retain and collect the note, or deduct the amount before due from the amount of the loss. As to all subsequent installments after the loss, there would be no risk on the part of the company, which is absolutely essential to the right to recover premium in such a case.

It would seem quite clear from these and other considerations that this policy cannot be construed as one issued for five years absolutely, subject to be suspended only in case of default in the payment of installments due on the note.

In other respects is this case, in its facts, like *Williams v. Albany City Ins. Co.*? For if it is, then it should be governed by the reasoning and conclusion arrived at in that case. We have been referred to the charter of the company, which provides that in case any person shall neglect or refuse to pay any installment for the space of thirty days after the same shall fall due, after notice, etc., then and in every such case the whole note upon which installments are due shall

become due and payable, and the company may proceed to collect the same.

The relations existing between these parties are not like those of persons insuring in a mutual company, where the assured becomes a member of the corporation and bound by all its rules. This company may have authority under its charter to carry on business on the mutual plan, but such is not the contract in this case, and the rules of law applicable to persons insuring upon that plan can have no application or force upon this question. If therefore the provisions of the charter are binding upon this defendant, they can only have been made so by his own express agreement. The clause in the policy which it is claimed has this force reads as follows: "This policy is made and accepted upon the above express conditions, and the charter of this company, which charter is to be resorted to and used to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for, and which is hereby made a part of this policy." That is, it is made a part of the policy for the purpose of explaining such rights and obligations of the parties as are not otherwise provided for by the terms of their agreement. Where provided for, the provisions of the charter can have no application. The rights and obligations of both, so far as in issue in this case, are fully and specially provided for, in their agreement, and the provisions of the charter, if they could be resorted to at all, can therefore neither enlarge, vary nor change the written obligation. Under the latter, failure to pay an installment when due upon the note, cannot make the subsequent installments due and payable. To so hold would be to permit an instrument not seen, inspected and carefully examined, to change in important matters, by a mere reference thereto, the deliberate agreement which the parties entered into. No such effect can be given to the charter, and the reference thereto as contained in the policy will warrant no such construction.

This case in its facts is not, therefore, like *Williams v. Albany City Ins. Co.* In that case the policy was for a definite fixed period for which an entire sum was to be paid. Here the policy was a yearly policy with yearly premiums, and a failure to pay one did not render all due. There the policy contained a condition that if the note given for the premium was not paid at maturity the full amount of premium should be considered as earned. Here there was no such provision. A default neither rendered all due nor earned. The cases are not therefore alike, and the rule in that case should not and could not well be extended to cases like the present.

Careful examination of the provisions of this agreement, and mature reflection thereon, but confirm us as to the correctness of the views expressed in *Yost v. Ins. Co.* The views set forth in that case have not been fully concurred in by counsel, who claim that the words "null and void" as used in the policy, mean "voidable" and that the effect of a default in payment of an installment due is but to "suspend" all rights of the assured thereunder during the period of such default; that under any other view neither party could thereafter set up or acquire any rights under the policy, whereas by its terms a subsequent payment revived it thereafter; that if void both parties would have to meet and make a new agreement in order to operate as a revival; and we are referred to *Am. Ins. Co. v. Henley*, 60 Ind., 515, and other cases upon like policies in support of such views.

We certainly entertain very great respect for the opinions of those courts, yet we must declare the law and apply it as we understand it to be. We do not understand that an agreement declared by the parties to be void upon the happening of a certain contingency, may not contain provisions giving either party the right to revive it again. There is a class of agreements which the law declares void as being contrary to public policy, which the parties cannot revive or ratify or in any way

give force and effect to. There is, however, another class not merely voidable, but void, which the parties may by their subsequent acts and conduct renew or ratify so that the courts will enforce the same. In *Banks v. Werts*, 13 Ind., 203, it was held that a contract for the sale of goods on Sunday was void, but that the parties by subsequently treating it as a valid subsisting agreement might thus ratify it. Here was the case of a contract declared void, being forbidden by the positive provisions of the statute, and the court recognized the existence of a general rule that a void contract is not susceptible of ratification, but said it might be ratified and thus made a new contract, and authorities were cited in support thereof.

If then contracts forbidden and declared void by the express provisions of a statute may thus be ratified and enforced, why may not the parties agree in a case like the present, that upon default of payment the contract shall become null and void, and farther provide that a payment thereafter may revive and set it in operation again? Until revived in the manner agreed upon, it is void; it is no protection whatever to the assured during that period. A contract not void but voidable merely, when ratified usually relates back, and the contract speaks as though valid from the beginning. Not so with one that was void, or with this agreement. A payment by the assured revives the policy from that date, but gives no life or animation to it covering the period it was suspended. The contract in this case was divisible: the parties agreed how and in what manner it should terminate; when the risk which the company had assumed should cease, and how it might be brought to life again. A contract may be void in part and not *in toto*. A bond may be given with conditions to do several things, some of which are agreeable to law and some contrary thereto, and be held good as to the former and void as to the latter only. I know of no legal impediment in the way of parties agreeing in a case like the present, that upon

the happening of a certain contingency their agreement shall become absolutely null and void, and also to a provision in the same instrument that it may again take effect from and after the happening of a certain other event, at the option of either party. What principle of public policy would such an agreement violate? It would be contrary neither to sound morals nor to any statutory or common law provision. How far beyond this they might go would be another matter.

It was argued that the policy was suspended by the mere wrongful act of the assured in not paying the installment when due on the note; that he could at pleasure revive the policy by paying, and if he should not, he ought not to be heard to complain of any apparent hardship resulting from his own wrong in not paying as he promised to do.

This as a legal argument, when applied to the facts in this case, is more plausible than sound. It is a matter of almost daily occurrence for parties to take advantage of some positive provision of law to aid them in maintaining a defense to an action brought, and this frequently where in so doing they are taking advantage of something done by themselves which they ought not to have done.

An agreement is entered into and rights acquired thereunder which the other party refuses to recognize, and when sued he sets up some statutory provision in defense, such as the statute of frauds, and succeeds. A contract is entered into by contracting parties for the express purpose of carrying into effect that which is prohibited by law; one party may have fully performed on his part, yet to an action brought, the illegal purpose may be set up and constitute a successful defense. The objection that the contract is illegal comes with an ill grace from the defendant; yet the objection is allowed, not for his sake, but because the defense may be founded upon some principle of public policy which the defendant may have the advantage of, contrary to the real

justice of the case as between himself and the plaintiff. So a party may by a trespass regain possession of his own property; yet he may retain the property, thereby taking advantage of his own wrong. So goods may be bought on a promise of cash payment; the purchaser, on non-payment, is liable to an action, but he may therein avail himself of a set-off, and the goods cannot be recovered back. So a merchant may promise to sell a customer goods if he will but pay the old account, and upon receipt thereof he may retain the money, although he then refuses to sell. So a party may enter into an agreement and stipulate therein that on a breach thereof the other party may recover a certain amount as fixed and settled damages, yet when sued he may come in and dispute the amount thus agreed upon, and succeed contrary to his own agreement. Or he may, in a promissory note, agree to waive exemption laws, or pay a certain amount as an attorney's fee if suit is brought, and yet his willful refusal to pay would not, in this State, enable the holder thereof to enforce either provision.

Other illustrations might be given, but the above are sufficient. These illustrations might be classified, as the reason for the conclusion arrived at would not be the same in every case, yet in each the party defending would have the benefit of what in morals is his own wrong, and wherein some of the supposed cases differ from the present is not apparent.

In this case the payment of an installment is in consideration that his property shall be insured for one year. To him there is none other. If the policy is null and void, or suspended, from whatever cause, so that the company incurs no risk and the assured receives no protection, why should there be a legal responsibility for the amount of the premium. This would be construing the note separate from the policy of which it was a part, and holding the maker thereof alone bound by the agreement. There would be no mutuality in such a contract. Ordinarily a failure to pay a money demand

is compensated for by the award of interest as damages, and beyond this the parties would not be permitted to stipulate, no matter what farther damages might be sustained. In this case the measure of redress demanded is far beyond any such standard as the law usually allows. The maker of this note must not only pay interest after each installment becomes due, but also forfeit all right under the policy which he has in his possession. If a merchant should sell and deliver to another a bill of goods on condition that the value thereof should be paid in thirty days, and that in default of payment he might re-take possession of all the goods not consumed, even to the whole thereof, and recover the entire contract price therefor besides, would the courts enforce such an agreement? Yet in principle wherein does it differ from the one sought to be enforced in this case? It might in that case be said, as it is here, that the goods under such an agreement were sold at a better rate to the purchaser than they otherwise would, and that the purchaser could relieve himself from the penalty by prompt payment, and that it was his own wrong that wrought the injury. The case supposed falls far short of the case at bar. If the assured, no matter from what cause, neglects or omits to pay his note, the company may quietly wait until the whole amount is due, then sue and recover and collect its judgment after the full five years have expired, thus incurring no risk whatever in the meantime, or after the first year. The company by waiting would thus obtain an undue advantage. It could recover a premium for a period for which it gave no protection and no equivalent whatever therefor. It would get something for nothing, thus placing it on the high road to wealth in a way which so many have sought but so few found.

But all suggestions on the part of plaintiff that defendant is allowed to take advantage of his own wrong if the judgment below is sustained, seem to us wholly unfounded and out of place. The vital question in this

case is, what is the contract of this defendant? Did he agree absolutely to accept a five years' insurance upon his property and absolutely to pay all five installments of the note? If he did and then by any management or finesse seeks to defeat or avoid his promise, he would be justly censurable, to say the least. Or on the other hand, did he agree merely to take a one year's insurance, and afterwards at his option to renew the insurance from year to year for four years more? If this were his promise as contained in all the agreements, he is guilty of no wrong legal or moral when he declines at the end of the year to renew at all. He declines because he is left entirely at liberty to do so by his promise and also by the law. Nor is there any room for the suggestion that such a construction of the papers renders them nonsensical and purposeless; the very form of the instruments, constituting as they do a new contract as often as a new payment is made without any new papers, is of itself an advantage to the insurance company and sufficiently accounts for their adopting this form even though they understood its effect to be as we understand it.

There is still another serious difficulty in this case not thus far noticed. The right of the plaintiff to do business in this State is derived from our statutes, and not from its charter. Our statutes prescribe the terms and conditions upon which foreign insurance companies complying therewith may transact business in this State. And the companies are required from year to year to renew certain statements and evidences of investments, and all companies are prohibited under a penalty from carrying on business in the State, unless such conditions have been fully complied with. The Commissioner of Insurance is directed to examine into the condition of companies not organized under the laws of this State, and whenever it appears to him that the affairs of any such company are in an unsound condition, to revoke the certificate of authority granted, and the agents of

such company, after notice of such revocation is given, are prohibited from issuing any new policy or renewing any previously issued. Act No. 92, Session Laws of 1871. The record sets forth that authority was given the plaintiff to carry on business in this State in 1870 and annually renewed thereafter until 1876; that on February 14th, 1876, such authority was revoked and has not since been renewed. This revocation of authority was previous to the time the first installment upon the note sued on fell due.

If a foreign insurance company may come into this State, and under an authority given to do business for one year, issue a policy like the one in this case, why may it not one that may thus be kept alive ten years, or even for a much longer period, limited only by the terms of a foreign charter,—with this company, ten years? If then the authority is revoked, and the company may proceed to collect the premiums as they fall due, may it not in this way continue its business in this State, contrary to the letter and spirit of our legislation? A company might thus carry on business and receive premiums in extension of its policies, differing from a renewal thereof in name only. One of the primary objects of our insurance laws, both as to foreign and domestic companies, is to afford protection to the insured. The Commissioner of Insurance is to revoke the authority whenever it shall appear to him that the affairs of the company "are in an unsound condition." The authority having been revoked, should the company still be permitted to collect premiums, while giving no adequate security in return? A foreign insurance company coming into this State under an authority to do business herein for one year, and issuing policies like the one in the present case, and accepting installment notes for the premiums, must, in order to collect the installments as they become due, show a continued and existing authority as a condition of its right to recover. If any other rule could prevail, insurance companies could evade the laws of this State and continue to collect premiums although

utterly insolvent.   The insured would not be the only one, under such a condition of things, who would be defrauded; the State might be, of the taxes which foreign insurance companies are required to pay.   Any payment made by such a company would be entirely voluntary, as payment could not be enforced by the State against a company beyond its reach.   Foreign and domestic companies are treated alike in this respect under our laws; both must submit to the Commissioner's inspection, and he may revoke the authority of either, after which no farther business can properly be carried on.

We do not wish to even intimate by what we have here said, that the plaintiff in this case is not entirely solvent and responsible, or that it has not kept entire good faith with the State in voluntarily paying taxes on premiums received since its authority was revoked.   We must take this record as we find it, and cannot question or inquire into the Commissioner's reasons for what he did, or whether he was justified or not, nor have we the means of so doing.   This company may be solvent, but if it can in this way continue to collect premiums, others having like policies and notes, and that are clearly insolvent, may do likewise.

The judgment must be affirmed with costs.

The other Justices concurred.