SWING *v.* ·CAMERON.

1. CORPORATIONS—FOREIGN INSURANCE COMPANIES—DOING BUSINESS WITHOUT PERMISSION—ACTION FOR ASSESSMENT.

A foreign mutual fire-insurance company which insures property situated in this State without having obtained authority to do business in this State (§§ 5157, 5162, 2 Comp. Laws), cannot maintain suit in the courts of this State to collect an assessment due on the policy, though the contract of insurance was made in the State of the company's domicile by correspondence with the insured in another State (§ 10467, 3 Comp. Laws). OSTRANDER, GRANT, and BLAIR, JJ., dissenting.

2. SAME—PLEADING—GENERAL ISSUE—DEFENSES AVAILABLE.

In an action by the receiver of a foreign mutual insurance company to recover an assessment on a policy issued by the company, the defense that the company was not authorized to do business in this State is available under the plea of the general issue without special notice.

Case made from Antrim; Mayne, J. Submitted January 30, 1906. (Docket No. 69.) Decided July 23, 1906.

Assumpsit by James B. Swing, trustee, for the creditors and policy holders of the Union Mutual Fire-Insurance Company of Cincinnati, Ohio (dissolved), against Archibald Cameron, James Cameron, and John Cameron, copartners as Cameron Brothers, for an assessment. There was judgment for defendants, and plaintiff appeals. Affirmed.

*Leavitt & Guile* and *Patterson A. Reece*, for appellant.

*Fitch R. Williams*, for appellee.

HOOKER, J. The questions in this case are two:

1. May an action brought by a receiver or trustee of a foreign mutual insurance company, which has never ob-

tained authority to do business in Michigan, upon a policy issued to a resident of this State by said company in Cincinnati, upon an application sent by mail from Chicago, upon a sawmill situate in this State, to recover an assessment, as provided in its policy, to pay losses, be defeated upon the ground that the plaintiff has no right to prosecute in the courts of this State ?

2. Can such defense be made under a plea of the general issue and without special notice ?

It is contended that this contract of insurance was valid under the case of *Allgeyer* v. *Louisiana*, 165 U. S. 585, being made in Ohio, and, being valid·there, is valid everywhere. That case was a prosecution for a penalty against a resident of Louisiana who made a contract for insurance in New York upon property temporarily in Louisiana. The act supposed to be a violation of the law was the mailing to the insurance company of a notice of the shipment of certain cotton, in accordance with the terms of the policy. The court held that sending this notice through the mail, notifying the company of the property to be covered by the policy already delivered, did not constitute a contract made or entered into in Louisiana, and that it was but the performance of an act rendered necessary by the provisions of the contract already made between the parties outside of the State, which contract was to be performed outside of the State and in New York, where the premiums were to be paid and losses, if any, adjusted. The act (Act No. 66, Acts of 1894) alleged to be violated was as follows:

" An act to prevent persons, corporations or firms from dealing with marine insurance companies that have not complied with law."

The act reads as follows:

" Be it enacted by the general assembly of the State of Louisiana, that any person, firm or corporation who shall fill up, sign or issue in this State any certificate of insurance under an open marine policy, or who in any manner whatever does any act in this State to effect, for himself or for another, insurance on property, then in this State,

in any marine insurance company which has not complied in all respects with the laws of this State, shall be subject to a fine of one thousand dollars."

The court held that the sending of such notice was not within the terms of the statute. Whatever may be thought of the question whether the sending of the notice was not an act effecting insurance upon the 100 bales of cotton, which might not otherwise have been covered by the existing policy, the determination that the contract was valid is not conclusive of the question before us.

If it be conceded that the policy before us was valid between the parties, the question still remains, Must the courts of this State enforce it at the suit of the insurance company, which has defied its authority by insuring property within this State without having complied with the conditions which our statute imposes? The legislature has attempted to restrict the issue of insurance policies *upon property in this State* to companies that have, after compliance with conditions imposed, obtained a certificate of authority from the State insurance commissioner, and this applies to domestic as well as foreign companies. See *Seamans* v. *Temple Co.*, 105 Mich. 404 (28 L. R. A. 430); *Swing* v. *Lumber Co.*, 140 Mich. 344; 2 Comp. Laws, §§ 5157, 5162; *Hartford Fire-Ins. Co.* v. *Raymond*, 70 Mich. 501. If it be said that this statute applies to cases where the contract is made within the State, we reply that the evident intent, as shown by the entire scheme of our insurance laws, was to protect the owners of property in this State from questionable insurance, and whether the law is effective in making contracts made elsewhere invalid or not, and whether or not it can collect a penalty in such a case, there can be no doubt of its right to withhold a certificate from offending companies until the penalties are paid under section 5162. See cases cited in *Hartford Fire-Ins. Co.* v. *Raymond*, supra. In dealing with property within its jurisdiction, it has seen fit to provide restrictions upon insurance, and when insurance companies disregard and disobey such

laws, relying upon their rights to do such business else-where, though in violation of and contrary to the expressed policy of the State, their right to enforce the same here may be denied by the State. 3 Comp. Laws, § 10467, provides:

"(10467) SEC. 2. But when, by the laws of this State, any act is forbidden to be done by any corporation, or by any association of individuals, without express authority by law, and such act shall have been done by a foreign corporation, it shall not be authorized to maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act."

We have passed upon this section in the case of *People's Mut. Ben. Society* v. *Lester*, 105 Mich. 716, and held it applicable to foreign companies. It would be difficult for the legislature to state more plainly than is there stated that if a foreign insurance company sees fit to make contracts upon property in this State, without express authority of law, it must go elsewhere to enforce such contracts. This doctrine is supported by cases elsewhere, and the question was not passed on in the case of *Allgeyer* v. *Louisiana*, supra, unless the contrary rule must necessarily follow from the determination of the validity of the contract in that case.

In a case decided in Wisconsin, practically simultaneously with the decision of our own case of *Seamans* v. *Temple Co.*, supra, a similar decision was made. See *Rose* v. *Kimberly & Clark Co.*, 89 Wis. 545 (27 L. R. A. 556). Recognizing the propriety of enforcing in Wisconsin a contract made by a Wisconsin company insuring property in Missouri in violation of a Missouri statute (*Seamans* v. *Knapp, etc., Co.*, 89 Wis. 177 [27 L. R. A. 362]), the court said:

"But it is obvious that that decision does not reach or control this case. The question here presented is whether the courts of this State will enforce a contract plainly and squarely opposed to the public policy and laws of the State.

"Doubtless the general rule of law is that a contract valid where made is valid everywhere, but this rule is not without exception. The provisions of our statutes which prescribe the conditions upon which alone foreign insurance companies may do business within this State are very stringent and sweeping. Sanborn & B. Stat. §§ 1915–1919. They provide, in substance, that no foreign fire-insurance company shall, directly or indirectly, take risks or transact any business of insurance in this State, except upon compliance with certain specified requirements. It is unnecessary to state what these requirements are in detail, but it is sufficient to say that they include, among other things, the filing of verified statements showing investments of capital in certain specified securities, and to certain amounts, or, in lieu thereof, a deposit with the State treasurer of a certain amount of United States bonds, also the payment of certain license fees, and the filing of various documents intended for the benefit and protection of policy holders within the State, and only upon compliance with all these requirements is the commissioner of insurance authorized to issue the license which authorizes the doing of business within this State. The object of this statute is so plain that it cannot be mistaken. It is to protect our citizens against irresponsible and worthless foreign companies of the very kind which we have now before us. The evil to be corrected is, not the writing of a policy by an unlicensed company within this State alone, but the writing of such a policy at all. Bearing in mind the object of the statute and the evil to be corrected, it is very plain that the object will be largely defeated, and the evil will flourish as before, if it be held that companies without license can establish their agencies just outside of the State line and conduct their business by mail.

"Now, it will be observed that the legislature was not content with providing that no unlicensed company should make a contract of insurance within this State, but provided that no such company should, directly or indirectly, take risks or transact any business of insurance in this State. The writing of a policy of insurance upon property situated within this State would seem pretty clearly to be, in some degree at least, the transaction of insurance business in this State, whether the policy be written just within or just without the State line. In was said in *Stanhilber* v. *Insurance Co.*, 76 Wis. 285, on page 291:

" ' A contract insuring property in this State necessarily involves the doing of business in this State, and hence is subject to the laws of this State.'

"We regard the remark as entirely correct, and fully as applicable to the present case as to the *Stanhilber Case*. It is not meant by this that the legislation in question has extraterritorial effect, or that it will invalidate a contract made in Illinois, but simply that, when that contract is a contract insuring property within this State, it is against the policy of our law, and will not be enforced by the courts of Wisconsin unless the conditions prescribed by our laws have been complied with. In no other way can the manifest purpose and intent of the statute be reached. Any different construction would render the law of little effect.

"These views necessitate reversal of the judgment."

Again, in *Seamans* v. *Zimmerman*, 91 Iowa, 366, after citing and commenting upon cases where contracts valid, because made out of the State, were enforced, the court said:

"In none of the cases cited, so far as we have observed, were the statutes construed the same, in legal effect, as that of this State, and in several of the cases stress was laid upon provisions which are wanting in that statute. The prohibition of section 1144 is directed, not merely to the agents as such, but to the companies themselves. They are forbidden to take any risks in this State, either directly or indirectly. The general assembly intended the prohibition to reach as far as its jurisdiction extends. The power of the legislature of a State to make contracts like those under consideration void is not questioned. It was recognized in *Columbia Fire-Ins. Co.* v. *Kinyon*, 37 N. J. Law, 33. Comity does not require the enforcement of a contract valid where made but in violation of the law of the State where it is sought to be enforced. The provision of the statute under consideration was designed to protect the property owners of this State from irresponsible insurance companies, and the contracts in question belong to the class which the general assembly intended to prohibit. To hold that the company may recover the assessments would be to give it all the benefits which it ever expected to derive from the contracts, and would be an evident violation of

the spirit and intention of the statute. The contracts are contrary to the policy of this State as expressed in the statute, and the courts of this State will not aid the company to enforce them. Our conclusion finds support in the following authorities: *Cincinnati Mut. Health Assurance Co.* v. *Rosenthal,* 55 Ill. 86; *American Ins. Co.* v. *Stoy,* 41 Mich. 401; *Ætna Insurance Co.* v. *Harvey,* 11 Wis. 394. The certificate of the trial judge does not show where the policies make the assessments in question payable; but we have, for the purposes of this appeal, assumed that the policies are Wisconsin contracts, designed to be performed there."

A similar holding will be found in *Swing* v. *Munson,* 191 Pa. 582 (58 L. R. A. 223). In that case this plaintiff was trying to collect assessments in Pennsylvania. Upon the assumption that the contract was made in Ohio the court said:

"It is argued that the contract was made in the State of Ohio. It being valid there, under the Constitution of the United States, it is enforceable in Pennsylvania. The evidence does not show that the contract was made in Ohio. To our minds, it shows quite the contrary. The attempt by a pretense to shift the place of the contract to Ohio, to evade the prohibitions of our statutes, is so manifest that it would, perhaps, have warranted a peremptory instruction to the jury to find for defendant on the evidence. But that we may meet a more important question, because it affects the interests of all foreign insurance companies that seek to do business in this State, we prefer to assume that the contract was made in Ohio, and is lawful there. It was a contract, however, in direct violation of the laws of this State. It was the indemnification of a citizen of Pennsylvania against loss by fire on property wholly within Pennsylvania. Without regard to where the contract was made, the subject of it was property within this State. It is the attempt of a foreign insurance company to do business in this State in violation of the laws of this State.   *   *   *

"All these acts were violated by this appellant corporation. It made no pretense of observing the provisions of any of them. Assume that the contract, because made in Ohio, could have been enforced in the courts of that State, it does not follow that the courts of this State will lend

their aid to the enforcement of a contract in violation of its own policy as declared in its laws. If these laws contravene the Constitution of the United States, or that of Pennsylvania, our courts would enforce the contract, because it would then be lawful here, as in Ohio. But if our statute be constitutional, then the contract is directly opposed to our declared law. * * *

" Our legislature had the constitutional power to enact these statutes. Under them this contract is unlawful in this State. Shall our courts by enforcing it declare it lawful ? This would be subversive of the very policy our State had adopted. It would, as to results, repeal all the statutes regulating contracts with foreign insurance companies."

We think the question has been passed upon and is foreclosed in this State, and see no reason for asserting a contrary doctrine.

Is the absence of notice of this defense prohibitive ? In the case of *Heffron* v. *Daly*, 133 Mich. 613, we held that it is the duty of the court to take notice of an illegality in a contract, although not pleaded. *Richardson* v. *Buhl*, 77 Mich. 632 (6 L. R. A. 457); *Oscanyan* v. *Arms Co.*, 103 U. S. 261. Although it be conceded that the contract was valid, because made in Ohio, it is so far in contravention of our law as to justify the application of that rule.

The judgment should be affirmed.

CARPENTER, C. J., and McALVAY, MONTGOMERY, and MOORE, JJ., concurred with HOOKER, J.

OSTRANDER, J. (*dissenting*). It is contended for appellant that this case and *Swing* v. *Lumber Co.*, 140 Mich. 344 (see, also, *Swing* v. *Munson*, 191 Pa. 582 [58 L. R. A. 223]), are to be distinguished by the fact that in this case the evidence fails to show any act of the insurance company within the State of Michigan. The further contention is made that no notice was given by defendants of an intention to prove or to rely upon the fact that the insurance company was not authorized to do business in Michigan. The case made by plaintiff was, in

substance, the same as the one made in *Swing* v. *Lumber Co.*, supra, so far as the nature of the claim and the character and authority of plaintiff are concerned. It appeared, however, and the court found, that the policies of insurance were issued in Ohio upon applications made by citizens of Illinois, who paid the premiums and received the policies. It does not appear that any act in effecting the insurance was done within this State. The policies were made payable to Cameron Bros., who are residents of Michigan, and the property insured was situated in Michigan. Defendants proved, over objection, that the insurance company never complied with the laws of Michigan, and had not authority to do business therein, and offered no testimony in denial of that presented by plaintiff. The trial court found as matter of law that plaintiff could not maintain his action, and that it was the duty of the court sua sponte to notice the fact that the policies were issued by a company not authorized to do business in this State. As to the last point, appellants rely upon *Warner* v. *Delbridge & Cameron Co.*, 110 Mich. 590 (34 L. R. A. 701), where it is held that the suggestion that it was not proved that a foreign insurance company had authority to do business in this State, made for the first time in this court, came too late. In the case at bar the defendants made the proof, the court received it, and the question is whether we shall reverse the judgment because defendants gave no notice of the intention to introduce the proof. Plaintiff was not surprised by the evidence. The fact is not a disputable one. Upon a new trial, if one was ordered, an amendment of the notice, if required, would be permitted as of course, so that there is involved the question of costs of this appeal only. But I am of opinion that the court was right in admitting the evidence and in giving it effect, if satisfied that upon the facts which were found the courts of this State were closed to the plaintiff. The statutory prohibition is intended, primarily, to make effectual a State policy, and not to afford to individuals a method of defending suits. Much that is

said in the opinions in *Richardson* v. *Buhl*, 77 Mich. 632 (6 L. R. A. 457), and in *Heffron* v. *Daly*, 133 Mich. 615, upon the subject, is in point here.

As to the meritorious question: By section 5136, 2 Comp. Laws, it is provided that "no insurance company, or officer, or agent, or agents of any insurance company, unincorporated or incorporated in any other State, shall transact any business of insurance in this State, unless," etc. By sections 10466, 10467, 3 Comp. Laws, it is provided that a foreign corporation may prosecute in the courts of this State in the same manner as corporations created under the laws of this State, but that when by the laws of this State an act is forbidden to be done by any corporation without express authority by law, and such act shall have been done by a foreign corporation, it shall not be authorized to maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of or entered into in consideration of such act.

It is contended for the appellant that the facts conclusively show that the insurance company did not transact "any business of insurance in this State" within the proper meaning of section 5136; that, the original contract being valid and binding and entered into without this State, the courts of this State cannot lawfully be closed to the enforcement of a liability arising out of it; that a construction of our statutes which will have the effect of bringing the acts done, in effecting this insurance, within the prohibition of the statute, is forbidden by the Federal Constitution, and if such a construction is required by the terms of the statute, it results in a denial of rights guaranteed by section 1 of the Fourteenth Amendment of the Constitution of the United States. It has been settled by repeated ajudications of the Supreme Court of the United States that foreign corporations do business in a State as a matter of grace and not of right, and the State may prescribe such rules as it may see fit to regulate the privilege granted and to protect its citizens.

It seems to be equally well settled that a corporation of any State, lawfully organized, may contract within that State with any person, firm, or corporation, agreeably with the statute requirements of its domicile, in carrying on the business it is organized to do; that, the contracts being personal, the residence of the persons with whom it makes them is not important or controlling as to the lawfulness of the bargain or its enforcement by either party.

The case *Allgeyer* v. *Louisiana*, 165 U. S. 578, is decisive of the question. An act of the legislature of Louisiana was entitled: "An act to prevent persons, corporations or firms from dealing with marine insurance companies that have not complied with law," and provided:

"Any person, firm or corporation who shall fill up, sign or issue in this State any certificate of insurance under an open marine policy, or who in any manner whatever does any act in this State to effect, for himself or for another, insurance on property, then in this State, in any marine insurance company which has not complied in all respects with the laws of this State, shall be subject to a fine of one thousand dollars, for each offense, which shall be sued for in any competent court by the attorney general for the use and benefit of the charity hospitals in New Orleans and Shreveport." Act No. 66, Acts of 1894.

The State sought to recover against the defendants for three violations of the act. Defendants were exporters of cotton from the port of New Orleans to ports in Great Britain, selling cotton in New Orleans to purchasers in said ports. They had made with the Atlantic Mutual Insurance Company of New York a contract for an open policy of marine insurance. It was the custom of business to draw a bill of exchange against the purchaser of cotton, attaching to it the bill of lading and an order on the Atlantic Mutual Insurance Company for a new and separate policy of insurance, under the said open policy, which covered cotton in bales purchased and shipped by them, shipments being reported to the company by mail or telegraph. The bill of exchange, with the bill of lading and order for insurance attached, was

presented to the insurance company, which issued and delivered to the holder of the bill of lading and the bill of exchange, if it had been negotiated, or to the agent of defendant if not negotiated, a new and separate policy of insurance in accordance with the contract under the open policy. The Atlantic Mutual Insurance Company was a corporation created by the laws of New York, domiciled and carrying on business in that State. It had no agent in the State of Louisiana, and had not complied with the conditions imposed by the laws of that State for doing business therein. The supreme court of the State of Louisiana gave judgment in favor of the plaintiff as for one violation of the statute, to review which judgment an appeal was taken to the Supreme Court of the United States. The constitution of Louisiana provided (Act 264), also:

"No foreign corporation shall do any business in this State without having one or more known places of business, and an authorized agent or agents in the State, upon whom process may be served."

It was held that the statute in question was, as applied, a violation of the Federal Constitution, and afforded no justification for the judgment awarded against the plaintiffs in error. The case distinguishes *Hooper* v. *California*, 155 U. S. 648, in which the conviction of an insurance agent in the State courts was affirmed, from the opinion in which case the following excerpt, indicative of the ground of the decision, is taken:

"It is said that the right of a citizen to contract for insurance for himself is guaranteed by the Fourteenth Amendment, and that, therefore, he cannot be deprived by the State of the capacity to so contract through an agent. The Fourteenth Amendment, however, does not guarantee the citizen the right to make within his State, either directly or indirectly, a contract the making whereof is constitutionally forbidden by the State. The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he might authorize an agent to violate in his behalf the laws of his

State within her own limits, involves a clear non sequitur and ignores the vital distinction between acts done within and acts done beyond a State's jurisdiction."

The supreme court of Louisiana held that the act of writing within that State the letter of notification to the insurance company in New York was an act done to effect insurance on property then in the State and was therefore prohibited by the statute.    It is said in the opinion of the Supreme Court of the United States:

"It was a valid contract, made outside of the State, to be performed outside of the State, although the subject was property temporarily within the State. As the contract was valid in the place where made and where it was to be performed, the party to the contract upon whom is devolved the right or duty to send the notification in order that the insurance provided for by the contract may attach to the property specified in the shipment mentioned in the notice, must have the liberty to do that act and to give that notification within the limits of the State, any prohibition of the State statute to the contrary notwithstanding.    The giving of the notice is a mere collateral matter.    It is not the contract itself, but is an act performed pursuant to a valid contract which the State had no right or jurisdiction to prevent its citizens from making outside the limits of the State.

"The Atlantic Mutual Insurance Company of New York has done no business of insurance within the State of Louisiana, and has not subjected itself to any provisions of the statute in question.    It had the right to enter into a contract in New York with citizens of Louisiana for the purpose of insuring the property of its citizens, even if that property were in the State of Louisiana, and correlatively the citizens of Louisiana had the right without the State of entering into contract with an insurance company for the same purpose.    Any act of the State legislature which should prevent the entering into such a contract, or the mailing within the State of Louisiana of such a notification as is mentioned in this case, is an improper and illegal interference with the conduct of the citizen, although residing in Louisiana, in his right to contract and to carry out the terms of a contract validly entered into outside and beyond the jurisdiction of the State."

See, also, *Lamb* v. *Bowser*, 7 Biss. (U. S.) 315; *Marine Ins. Co.* v. *Railway Co.*, 41 Fed. 643; *Com.* v. *Biddle*, 139 Pa. 605 (11 L. R. A. 561); *Swing* v. *Hill*, 165 Ind. 411; *Swing* v. *Storage Co.* (Ind. App.), 76 N. E. 1117; *Swing* v. *Brister* (Miss.), 40 So. 146.

There is language used in the opinion in *Seamans* v. *Temple Co.*, 105 Mich. 400 (28 L. R. A. 430), which, if controlling here, will require us to hold that the issuing of the policy was an act forbidden to be done without express authority of our law. That case did not call for a determination of the question; it being expressly found that the insurance company had agents in the State and was in fact, through its agents, and without compliance with the statute, doing businsss in this State. So, in *People's Mut. Ben. Society* v. *Lester*, 105 Mich. 716, it was found, expressly, that defendant was an agent of the plaintiff, doing business for it in this State. In both of those cases the right of the plaintiff to maintain its action is expressly denied. But, if the acts of the insurance company in the case at bar can be held violative of the statute only by giving the statute a construction opposed to the Federal Constitution, it must be determined that there was no violation of the statute, and that the issuing of the policies was not prohibited by the statute and was not an act forbidden to be done without express authority of law. It follows that the provisions of section 10467, 3 Comp. Laws, have no application. See *Clay Fire & Marine Ins. Co.* v. *Manufacturing Co.*, 31 Mich. 346, 354.

It remains to consider whether for any other reasons plaintiff should be denied the right to maintain his action. The general policy of the State in this regard is declared in section 10466, 3 Comp. Laws, already referred to. There is nothing vicious, immoral, or criminal in the nature of the contracts of insurance which were made. It cannot reasonably be said that evidences of State policy may be created by giving to a statute a construction which nullifies the Federal Constitution. The case, as

presented, is one in which plaintiff is seeking to enforce, in the courts of this State, obligations arising out of contracts which were valid, and the making of which was not prohibited by the laws of this State. I am of opinion that no good objection has been made.

The case was tried by the court without a jury, and findings of fact and of law were made. The court gave judgment for defendants, for the reason that in his opinion plaintiff was prohibited the use of the courts of the State. Appellant asks that the judgment be reversed, and one entered here in his favor. This may be done if the facts found will sustain such a judgment. It is stated in the finding of facts that there is no evidence upon certain material points, "excepting such inference as may be drawn from entries upon the books of the insurance company." These entries are set out, but the inference is not drawn. The court does not, by inference or otherwise, find an ultimate fact essential to a recovery by the plaintiff. For this reason, we are obliged to order a new trial.

Judgment should be reversed, and a new trial granted.

GRANT and BLAIR, JJ., concurred with OSTRANDER, J.