BOWEN *v.* PRUDENTIAL INSURANCE CO. OF AMERICA.

1. INSURANCE—EXECUTION OF POLICY—COMMENCEMENT OF CONTRACT—DELIVERY.

Under provisions of an application for life insurance stipulating that the policy should not take effect until delivery to the insured while he was in as good health as the application represented and until payment of the first premium, approval and execution of the policy by the insurer which transmitted it to the local agent for delivery. the premium having been paid, was insufficient to sustain an action for the accidental death of the insured during the day that defendant's agent received his policy for delivery, under instructions, however, not to deliver it unless decedent's health was satisfactory.[1]

2. SAME—APPLICATION—CONTRACT.

The application by which a party initiates insurance becomes a part of the policy when it is consummated, and is binding on the applicant as to the time when the policy shall become operative; and it is presumed to have been understandingly made.

3. SAME—CONDITIONS—LIFE INSURANCE.

While it is generally held, in the absence of an agreement to the contrary, that actual delivery is not a prerequisite of insurance, provided the contract is otherwise complete and it is evident the parties intended the contract to be effectual without manual delivery, if an agreement that the policy shall not be in force until actual delivery to the insured exists, it is valid and binding.

4. SAME—CONSTRUCTIVE DELIVERY—POLICY.

And where it appeared that the insured, on paying the premium, received a written receipt which contained a clause stipulating that the payment should not be binding if the insurer declined to issue the policy, and a provision in his application also recited that the insurance policy should take effect only when delivered to the insured while he was in good health, the beneficiary could

---

[1] The authorities on the effect of a stipulation in an application or policy of life insurance that it shall not become binding unless delivered to assured while in good health, are collated in notes in 17 L. R. A. (N. S.) 1144, and 43 L. R. A. (N. S.) 725.

not recover on a policy which was executed and approved by the defendant insurance company and mailed to its manager with advice not to deliver unless the insured was in a satisfactory state of health, and where he received the instrument on the day of the death of insured and afterwards mailed it to the agent who secured the application. There was no constructive delivery, since the instrument was not transmitted to the local agent for delivery without conditions.

Error to Montcalm; Davis, J. Submitted October 9, 1913. (Docket No. 13.) Decided December 20, 1913.

Assumpsit by Myrtle E. Bowen against the Prudential Insurance Company of America on a policy of life insurance. Judgment for plaintiff, and defendant brings error. Reversed, new trial refused.

*Kleinhans, Knappen & Uhl,* for appellant.
*Walker & Fitzgerald,* for appellee.

STEERE, C. J. Plaintiff brought this action in the circuit court of Montcalm county to recover the amount of an insurance policy for $1,000, alleged to have been issued by defendant on the life of her husband, Eugene T. Bowen, who was accidentally killed on the 28th of January, 1911. Deceased resided in Montcalm county, near Howard City, which was his post office address. Said policy is dated the 24th day of January, 1911, and at the time of the death of deceased was in the hands of Charles McCready, State manager for defendant, located at Wichita, Kan. Defendant was and is a foreign corporation organized under the laws of the State of New Jersey, with its home office at Newark in said State, being authorized to do business in the States of Kansas and Michigan, respectively.

The issue presented is whether or not said policy ever became operative. It is claimed by defendant

that it had not yet become valid and binding because of nondelivery.

The facts in the case are practically undisputed. Eugene T. Bowen, deceased, made application on December 27, 1910, for insurance in defendant company, naming plaintiff as the beneficiary. At that time his age on his nearest birthday was 34 years; he having been born on June 29, 1876. He asked to have his policy dated on the day he made his application. The application was solicited and taken by an acquaintance of deceased named Van Ostrand, who was a special agent of defendant, apparently with a roving commission, but working under said McCready, the Kansas State manager of Wichita. Van Ostrand's home was in Marion, Kan., and his position with defendant was superintendent of agencies under McCready. At the time of making his application Bowen paid Van Ostrand $21.43, which was an amount equal to the first premium on the policy applied for, taking a receipt, which provided that such payment would in no manner be binding on the company, except that it would be returned in case the company declined to issue a policy on the life of the applicant. A statement of physical examination for insurance made by a local physician not authorized by defendant accompanied the application; but the defendant company required an examination made by its own medical examiner. This examination was had on January 16, 1911, and the medical examiner's report duly forwarded to the home office of defendant. After this was received and approved, the policy in question was prepared, dated January 24, 1911, and mailed on that date, with instructions attached, to said Manager McCready, at Wichita, Kan.

It was received by McCready on Saturday, January 28th, some time during the forenoon. He also received about the same time a letter of instructions,

178 Mich.—5.

dated January 25th relative to an apparent discrepancy between the statements of age found in the application and report of defendant's medical examiner. This we regard as unimportant, inasmuch as it appears clearly there was no discrepancy in fact; deceased's nearest birthday having changed between the time of his application and the time of his last medical examination. Attached to the policy was a red slip of instructions to agents such as the company was in the custom of sending with all its policies and a receipt for the insured to sign. The latter was to be countersigned by the agent delivering the policy. The slip also gave directions not to deliver the policy unless the applicant was at the time in a satisfactory state of health. On the same day this policy was received by McCready, Saturday, January 28th, Bowen was killed, some time between 2 and 3 o'clock in the afternoon, while working in the field near his home in Montcalm county hauling stumps with a team, having apparently been struck by the root of a stump on which he was working. When last seen alive by his father shortly before the accident on the same afternoon, he was in good health, and had been so continuously from the time he made application for insurance. As far as shown his death was entirely accidental. On Monday, January 30th, McCready, having no knowledge of the applicant's death, mailed the policy, with the red slip of instructions, premium receipt, and letter of instructions relative to the discrepancy in the age to B. D. Van Ostrand, superintendent of agencies, Topeka, Kan.; that being his business address. Forwarding these papers to the agent who secured the application, for delivery to the applicant according to inclosed instructions, was in pursuance of the usual custom of defendant. Bowen being dead when Van Ostrand received these papers, he returned the same to Manager McCready on February 3d, notifying him of the situation, at the same

time remitting the amount paid him by Bowen to meet the first premium. This was sent to Bowen's family on February 24th, with a request for return of the receipt for same given by Van Ostrand to Bowen on December 27, 1910. This receipt contained the following clause:

"It is understood that this payment is in no way binding upon the said company, except that said company agrees to return the amount mentioned hereon in case the company declines to grant a policy on the life of said applicant."

This amount was again sent to McCready on April 11th by plaintiff's attorney, who insisted that defendant was liable upon the policy under a completed contract of insurance.

Plaintiff's declaration contains two counts; one alleging delivery of the policy on January 28th to plaintiff "or some person for and in his behalf," the second basing a claim of liability on acceptance of the application and execution of the policy.

Defendant pleaded the general issue, and gave special notice of defense, alleging agreement that there should be no contract of insurance until delivery of the policy, and that the same was never delivered to said Bowen or any one in his behalf prior to his death or at any other time; also giving notice of payment into court of the money received by Van Ostrand from applicant, a tender of which had been kept alive in the meantime.

At the close of plaintiff's evidence, and again at the close of all the testimony in the case, defendant's counsel moved for a directed verdict in its behalf on the ground of nondelivery of the policy. This was denied by the court, and verdict directed in favor of the plaintiff on the ground that there had been full performance on the part of deceased, following which the company had executed the policy, transmitted it

from the home office to its agent for delivery, and therefore, deceased being in a legal position at the time of his death to have demanded and compelled delivery of said policy, the same was valid and binding.

Plaintiff's claim that approval of the application and execution of the policy by defendant created a liability in the absence of delivery cannot be sustained. In his application over his own signature, Bowen expressly agreed—

"That the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health is in the same condition as described in this application."

This is plain language, easily understood. The application was initiative of the proposed contract, would become a part of it when consummated, was binding on the applicant, and fixed the time when his policy should become operative and his insurance begin. It is presumed to have been understandingly made. *Van Buren* v. *Insurance Co.*, 28 Mich. 398; *American Insurance Co.* v. *Stoy*, 41 Mich. 385 (1 N. W. 877).

While it is generally held, in the absence of an agreement to the contrary, that actual delivery is not a prerequisite of insurance, provided the contract is otherwise complete, and it is evident that the parties intended it should be effectual without manual delivery of the policy, although the ultimate issue of one was contemplated, it is also well settled that—

"If there be a provision or an agreement that the policy shall not be in force until actual delivery to the insured, the contract is not consummated nor the company bound in the absence of such delivery. 1 Joyce on Insurance, § 98.

"A contract of insurance never becomes complete

until the last act necessary to be done by either party has in fact been done, although one side or the other may conditionally bind itself by a proposition which, when unconditionally accepted, ripens the negotiation into a contract. In the case of fire insurance contracts there is often a contract before the policy is issued or before it is delivered to the insured; but this is seldom so with life insurance agreements, because there is usually, in the applications as well as the policies, a stipulation that the policy shall not be binding until delivery to the assured while in good health, and payment of the premium by him. Such conditions are valid and binding and will be enforced." 1 Bacon on Benefit Societies and Life Insurance (3d Ed.), § 272.

A contract of insurance rests upon and is controlled by the same principles of law applicable to any other contract. What the contracting parties intended, mutually agreed to, and their minds met upon, is the measure of their obligations. They could agree that the policy, though approved and executed, should have no effect until delivered, or till a certain time had arrived, or until some other condition had been performed, and when this is established the courts have no authority to make the contract binding upon either party contrary to their intention and the terms of their express agreement.

Here it was plainly agreed in writing that the policy in question should not take effect until issued and delivered to Bowen while he was in as good health as when he applied for the insurance.

It is contended in behalf of plaintiff that under the circumstances shown there was in contemplation of law such constructive delivery of the policy as complies with the terms of the contract. This is based on approval of the application, execution of the policy, and mailing it to the general agent in Kansas for delivery. Numerous cases are cited where it has been held that, if the premium is paid or acknowledged,

and the policy, signed in accordance with the application, transmitted to the applicant or the company's agent for delivery, the contract is complete, although the insured failed to receive it; the agent, in case it was sent to him, being regarded as agent or trustee for the insured. Most of the cases so holding are readily distinguishable from the one before us in the particular that the contract of insurance is bare of any provisions that the policy shall not become operative until the same is delivered to the insured while in good health, and it was therefore forwarded for unconditional delivery; the contract being complete in all its essentials, and nothing remaining to be done but put it into the hands of the insured. The principle deducible from those authorities is thus stated, in 1 May on Insurance (4th Ed.), § 60:

"To constitute a delivery of a policy, it is not necessary that there should be an actual manual transfer from one party to the other. The agreement upon all the terms, and the issue and transmission to the agent of a policy in accordance therewith, for delivery without conditions, is tantamount to a delivery to the insured."

Can it be said here that the policy was transmitted to the agent for unconditional delivery? While the word "issued" is often loosely used in relation to the execution and transmission of a document, issuing and delivering are in this connection equivalent legal terms. A policy of insurance is the formal, written instrument in which a contract of insurance is embodied, and in its nature such as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. When the contract provides that it shall not be operative until the instrument is delivered to the assured, delivery means, as in case of delivery of muniments of title, a surrender of possession and control, the transfer of the instrument from the grantor to the grantee, or

some person in his behalf, in such a manner as to deprive the grantor of the right to recall it at his option. Bouvier's Law Dictionary. There are two essentials to such a delivery—an intention to deliver, and an act evincing a purpose to part with control of the instrument. It is difficult to gather such intention from the undisputed facts in this case. The contrary is the natural inference. The policy was not mailed to the insured, who lived in Michigan, nor to a local agent there, but to the general manager of defendant in Kansas, under whom the canvasser who secured the application worked, and who also resided in Kansas. It was sent from the head office to a subordinate office of defendant in due course of business and according to the general custom, addressed to the manager under whom the soliciting agent acted, accompanied by positive written instructions that it should not be delivered to the applicant except upon certain conditions, one of which was that he should be in as good health as when he applied for insurance. This condition the applicant knew of, and had consented to as a part of his contract. It is true that he would not be bound by any secret instructions to the agent, of which he had no knowledge, and in relation to which he had not contracted; but of this condition he did have knowledge and had so contracted. That he knew his application was tentative, at the option of defendant, and subject to certain conditions, and that in the regular course of business some time must elapse before his insurance would become effective if finally granted, is clearly indicated. Defendant had once refused to accept the application without a further medical examination, to which he had subsequently submitted, in Howard City, Mich., but 12 days before his death, and the physician's report had thereafter been forwarded to defendant's office in Newark, N. J. The instructions sent with the policy are competent and persuasive evidence of an intent

tending to negative the claimed inference, from its being mailed to the Kansas manager as a step towards ultimate delivery, that it was in effect sent to the local agent for "delivery without conditions." Usage and accompanying instructions are proper to be taken into account as aids in discovering intent when considering the question of delivery.

Bowen did not receive the policy, and had no notice that his application was accepted during his lifetime. On the day of his death, and shortly before it occurred, the policy was received in Wichita, Kan., by McCready, who had nothing to do with taking the application and no previous dealings with Bowen. There were no personal relations between them in connection with placing the insurance which made McCready Bowen's agent to receive and hold the policy for him. *Busher* v. *Insurance Co.*, 72 N. H. 551 (58 Atl. 41). Van Ostrand, who had conducted the negotiations, was the only representative of defendant Bowen knew or was known to. To him naturally, and according to the usual custom of defendant, would be intrusted the duty of closing the contract and delivering the policy. He did not receive it until over two days after the applicant's death, and certainly could not become the agent of one then deceased.

In the numerous cases which have been passed upon by various tribunals where it was shown insurance policies had been forwarded to local agents for delivery, the courts, in determining whether or not there was a constructive delivery and completed contract, have, as a rule, recognized and been guided by the distinction between those cases in which, pursuant to a completed contract, the policy had been forwarded for unconditional delivery and those where, by the terms of the contract, something yet remained to be done by the agent as a condition precedent to delivery.

Authorities are to be found where the claim of constructive delivery has been sustained under the particular facts shown in special cases in which the local agent, through whom the application was made, having received a policy for conditional delivery, after ample time and opportunity in which to act, neglected or failed to make the delivery. The leading cases along that line, and which it is contended are controlling here, are *New York Life Ins. Co.* v. *Babcock,* 104 Ga. 67 (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134), and *Unterharnscheidt* v. *Insurance Co.* (Iowa), 138 N. W. 459.

In the latter case the application contained a provision that the insurance should not take effect unless the policy was delivered and accepted during the lifetime and good health of the applicant. The applicant resided in Sioux City, Iowa, and transacted the business with a resident agent of the defendant. A policy dated July 8, 1910, was mailed from the home office of the company to the local agent in Sioux City, with an accompanying letter of instructions not to deliver the same "unless settlement has been received and applicant in good health." The letter bore date July 19, 1910, and would reach him in due course of mail not later than July 20th; but the local agent left Sioux City July 15th, and did not return until August 7th following. The letter, with policy inclosed, was delivered at his office, and remained there unopened until his return. Some days after it was delivered at the agent's office the applicant sickened, and died August 2, 1910. Without attempting to review and reconcile, or fully accepting as applicable to this class of cases, all that is said in that opinion, we fully indorse the controlling, fundamental principle there declared that a party cannot take advantage of his own wrong nor profit by his own delinquencies, upon which ground the decision could well rest under the circumstances shown. It also finds support in an Iowa stat-

ute referred to. Among other things, the court said of delivery to an agent:

"It is quite obvious that this may or may not be true according to the circumstances under which the policy is placed in the agent's hands. If the premium is paid when the application is presented, and such application is approved and policy executed as of that date, and nothing remains but to deliver the paper to the insured, it may well be held that the sending of it to the agent to be by him given over to such insured person constitutes a sufficient delivery in law. To say the least, the neglect or omission of the agent under such circumstances to perform the manual act of placing the policy in the hands of the insured will not serve to suspend or postpone the obligation of the company upon its contract. In other words, delivery in law is not necessarily manual delivery. * * * In other words, the applicant had complied with all the requirements of the contract on his part and was entitled to receive the policy. He was not responsible for the voluntary absence of the agent, and his rights cannot be abridged or lost by the failure of the agent to perform his duty in the premises. * * * Our statute relating to life insurance provides that, where an applicant submits to medical examination by the company's physician, and is pronounced a fit subject of insurance, such company, in the absence of fraud, shall be estopped from pleading that the insured person 'was not in the condition of health required by the policy at the time of the issuance or delivery thereof.' Code, § 1812. No fraud is pleaded, and none is shown in testimony."

In *New York Life Ins. Co.* v. *Babcock, supra,* which is quoted from extensively and followed in the *Unterharnscheidt Case,* Babcock made application for insurance to the local agent at Dalton, Ga., where both resided. He paid the first year's premium, and took from the agent a receipt therefor, which provided that the company assumed no responsibility except to return the money, unless, among other things, the policy was issued, and delivered to him while in good health. The application which he signed contained no such

condition. In its opinion the court intimates that the condition in the receipt as to delivery while in good health was no part of the contract, but thereafter discusses certain aspects of the case as though it was. The application was approved, and a policy executed and mailed to the local agent at Dalton for delivery, without instructions and unconditionally so far as shown. It was received by the local agent about 2 p. m. November 30, 1895. Babcock's office was near by the agent's; but no effort was made to deliver the policy to him, and it remained in the agent's possession until after Babcock's death, he having been shot and killed in his office on the afternoon of December 1, 1895. The court, after declaring the rule that "the fundamental question to be determined in legal construction of all contracts is, What was the real intention of the parties?" discussing the condition in the receipt, said:

"Assuming that this condition constitutes a part of the agreement between the parties, it then becomes a material question as to whether or not such delivery was effected before the death of the insured. This is also a question of intention, and must be determined from the facts and circumstances in this case. * * * On the other hand, where a person parts with dominion and control over a thing by transmitting it, for example, through the mails or otherwise, with the intention that it shall pass unconditionally into the hands of another, and in the course of transportation it has become lost, the delivery is nevertheless complete in law."

The court then, after reviewing numerous authorities and discussing them at length, apparently concludes from the facts in the case before it that the company intended to and did forward the policy to its local agent for unconditional delivery, saying:

"When his application was accepted at the home office in New York, and a policy issued thereon was placed in the mails for the sole purpose of ultimately

reaching his hands, the company parted with its possession and control of the paper. The intention to deliver was complete."

A statutory provision of that State is also referred to as having an important bearing; the court saying:

"But the contract may be otherwise proved, and when it is shown to be in writing, it is ordinarily binding upon the company, though there should be no delivery whatever, either actual or constructive, of the policy, and though it should remain in the hands of the company. This principle is settled by the provisions of our statute, which declares:

"'Such contract [fire insurance], to be binding, must be in writing; but delivery is not necessary if, in other respects, the contract is consummated.' Civil Code, § 2089.

"By section 2117 of the Civil Code the same principle is made applicable to life insurance."

In the concluding paragraph of its opinion the court says:

"In any view then that we take of this case, whether the receipt given by the local agent to the applicant constitutes a part of the contract of insurance or not, the defendant company was liable. The insured had complied with every condition and had done everything required of him in order to obtain insurance upon his life. The company had unconditionally accepted his application and issued a policy to be unconditionally delivered to him. That policy was received by its local agent who, through negligence or in disregard of his obligations both to his company and to the other contracting party, failed, without excuse and without authority, to hand the policy to its real owner. In consequence of this failure and negligence, the company contends it is not liable. It thus seeks to take advantage of the wrong of its own agent, by virtually pleading his negligence as a defense to this action."

The strong, sound, underlying principle in both of the foregoing decisions, and which standing alone justifies the results reached, is that the defendants could

not escape liability by relying on their own wrongs, and are estopped by their misconduct and negligence, or that of their local agents through whom the applications were made, from denying a delivery which they should have made, and therefore the court could and did say that there was a constructive delivery.

The facts here differ in material particulars from those shown in the two cases just referred to, and we have no such statutory provisions in this State as gave support to those decisions. We find nothing in this case to take it out of the general rules applicable to insurance contracts as digested, from prevailing authorities cited, in 25 Cyc. pp. 718, 719. It is there said:

"Likewise the placing of the completed policy in the hands of the agent for delivery without condition to the insured completes the contract, although the actual delivery by the agent to the insured is not made before the death of the insured. But if the delivery to the agent of the company is with the understanding that it is to be delivered by the agent to the insured only after the performance of some condition, then until the condition is performed and it becomes the duty of the agent to deliver the policy to the insured the contract is not completed. * * * It is a usual condition of a life insurance policy that the delivery shall not be effectual to create a binding contract unless the insured is alive and in good health when the policy is delivered and the first premium paid, and under such conditions the death of the insured before the delivery of the policy will prevent its becoming effectual. And this is true, even in the absence of such a condition, if the policy is not to take effect until delivery, for the death of the insured makes a subsequent contract with him impossible."

A leading case supporting the rule that conditional delivery to the agent is not delivery to the applicant is *McCully's Adm'r* v. *Insurance Co.*, 18 W. Va. 782, in which deceased applied to the local agent of his home city, Wheeling, W. Va., for a policy of $1,000

life insurance. The application which he signed contained a provision that "this application shall be completed by delivery of the policy." A policy was sent to the local agent about September 1st. It contained a provision that it should take effect when countersigned by the local agent. It was not countersigned by the agent, nor ever delivered to the applicant, who was taken ill after the policy was received by the agent, and died on September 28th. Various questions were raised in the case; but it was disposed of on the ground that there was no completed contract of insurance because the policy was not countersigned by the agent nor delivered to the applicant. The court said in part:

"All of these conditions, whether wise or not, reasonable or unreasonable, are within the power of the insurer to impose. The insurer is not bound to accept the proposal made, and may impose such additional requirements to create the contract, as it sees fit. * * *

"The applicant in this case agreed that no contract should be consummated except upon delivery of the policy. This was a most important stipulation. Many troubles might arise between the application and the delivery, which would induce the company not to contract. The party's health might fail, his habits might become such as to make him an undesirable person to insure. It might be ascertained that the answers made in the application to important questions were untrue. * * * It seems to me, therefore, that, if the policy in this case had not in fact been delivered to McCully, no contract had arisen between him and the company. * * *

"In no view of this case can I see that a contract was at any time consummated between the parties. The mere sending of the policy to the agent did not make the contract. Beyond the policy itself there was no evidence of a willingness to contract. It is unlike those cases where there was an antecedent completed contract, and the policy was but the mere formal expression of the previous contract. * * * McCully

had no notice, actual or constructive, of the acceptance of his proposal; and according to the authorities at any time before such notice, if there had been an acceptance, it could. have been withdrawn. The conditions upon which by the terms of the policy it was to take effect, were never complied with; and the negotiations between the parties were never terminated by a mutual agreement between them."

That case was more favorable to plaintiff than this in the particular that the policy was in the hands of the local agent through whom the business had been transacted at a time when the applicant was alive and well; while here the special agent who took the application was not located in the same town, or State, and did not receive the policy during the applicant's lifetime. There is nothing in this case to indicate that Bowen was in any way deceived or misled, or that he understood he would be insured until his policy was delivered to him while in good health as agreed in his contract.

We are constrained to hold, under the documentary history and undisputed facts of this case, that the tentative contract of insurance was never consummated by delivery of the policy to the applicant during his lifetime.

The judgment is therefore reversed, and no new trial granted.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.