**RATIGAN v. AMERICAN UNITED LIFE INS. CO.**

**No. 1304.**

District Court, E. D. Michigan, S. D.

Feb. 21, 1941.

Charles A. Lorenzo, of Detroit, Mich., for plaintiff.

Oxtoby, Robison & Hull, Lawrence E. Brown, and Justin C. Weaver, all of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. On May 22, 1937, at Detroit, Michigan, William A. Ratigan, husband of plaintiff, signed an application for a $5,000 policy of insurance on his life, to be submitted to the Home Office of the defendant insurance company at Indianapolis, Indiana. This application was taken by defendant's general agent, George R. Schulte, who resided at Niles, Michigan, and whose office was located in South Bend, Indiana. Agent Schulte was licensed to solicit insurance in the states of Michigan and Indiana.

2. This application listed the beneficiary as "Madeline Elinore Ratigan", without designating her relationship to the applicant. It also listed the applicant's birth date as

November 21, 1882, and requested that the policy be dated as of defendant company's approval. On the reverse side of the application, under the heading "Agent's Report", agent Schulte listed the manner of premium payment as monthly installments, and the applicant's nearest birthday as 54 for computation of annual premiums. According to defendant's rate book, the rate of premium on the desired policy during the first few years was $154.10 per annum for age 54 and $162.90 per annum for age 55.

3. By the terms of the application Mr. Ratigan expressly agreed, among other things, as follows:

(a) On behalf of himself and anyone claiming under the application to waive any privilege which might otherwise be enforced to prohibit any physician from disclosures relative to applicant;

(b) That acceptance by applicant of a policy as written by defendant would constitute a ratification of any correction or modification inserted in the space provided on the application for Home Office endorsement; and

(c) The insurance would not take effect unless and until the first premium or one or more of the first installments thereof was paid and the policy delivered to the applicant during his lifetime and sound health, except that if the first premium or any installment thereof was paid in advance to an authorized agent of the company and the Binding Receipt attached to and bearing the same number as the application was detached and given to applicant by the agent, and the application was approved by the Home Office on the form and for the amount applied for during the applicant's lifetime and while in good health, the insurance would be effective from the time of such final approval by the defendant.

4. The blanks in the so-called "Binding Receipt" were never filled in, nor was it detached from the application. It composed part of the application as introduced into evidence. In the space provided on the application for Home Office endorsement, a statement was inserted that the relationship of the beneficiary was completed to read: "wife".

5. In the Agent's Report on the reverse side of the application, agent Schulte stated that he was satisfied that the applicant was then and had been of temperate habit and was then in sound health.

6. Applicant Ratigan submitted to and passed a medical examination for such insurance on May 27, 1937, and in the health statement which he signed at that time he stated that he was in sound health so far as he knew and believed.

7. On June 9, 1937, defendant's Home Office prepared and issued a $5,000 policy of life insurance on this application, designating the primary beneficiary as "Madeline Elinore Ratigan, his wife", showing the consideration for the policy to be the application and a premium of $14.40 for the period ending July 9, 1937, and a like sum monthly. The title cover of the policy listed the annual premium as $162.90.

8. This policy was mailed to agent Schulte's office at South Bend, Indiana, where he assumed it was received on Thursday, June 10, 1937. Attached to and accompanying the policy was a letter from the Home Office to agent Schulte, reading as follows:

"The date of birth given in this application is 11-21-1882. If correct Mr. Ratigan's age nearest birthday is fifty-five years instead of fifty-four. Rather than hold up action to verify the date of birth we have issued the policy at age fifty-five. If not correct please return it with instructions.

"We have assumed that the primary beneficiary is the wife of the applicant."

9. From June 10th to Saturday, June 12, 1937, agent Schulte was out of town on business. He returned to his office on June 12, 1937, when he saw for the first time the policy and Home Office letter attached thereto.

10. On the afternoon of Thursday, June 10, 1937, applicant Ratigan, who resided and had his office in Detroit, Michigan, consulted a private physician in Detroit, Michigan, complaining of chest pains, and gave a history of having suffered likewise on previous occasions. On Saturday, June 12, 1937, at 11:55 P. M., Mr. Ratigan died at his home. The physician whom he had consulted on June 10, 1937, arrived shortly after his death. This physician testified that Mr. Ratigan had suffered from heart disease for several months prior to his death, and that this disease, angina pectoris, had been the cause of his death.

11. Plaintiff testified that so far as she knew her husband appeared to her to have been in sound health at about the time of applying for the insurance and up to the time

of his death, except for minor attacks of indigestion and colds.

12. On Monday, June 14, 1937, at South Bend, Indiana, agent Schulte learned of Mr. Ratigan's death, and returned the policy to the Home Office without its ever having left his possession or been seen by Mr. Ratigan. No part of the premium had ever been paid.

13. Defendant contended that no contract of insurance was ever consummated because the policy had not been delivered to Mr. Ratigan while he was in sound health and no premium had been paid.

14. Plaintiff started this suit as the named primary beneficiary, claiming that there was a completed contract of insurance because the necessary premium had been paid and there had been a constructive delivery of the policy to the applicant.

15. Plaintiff is a citizen and resident of Detroit, Michigan, defendant is an Indiana corporation, and the amount in controversy exceeds $3,000, exclusive of interest and costs.

16. The case came on for trial before the court and a jury. At the close of plaintiff's proofs and again at the close of all the proofs, defendant moved for a directed verdict of no cause of action. Defendant contended (a) as a matter of fact plaintiff had not proved by a preponderance of the evidence that at the time in question the applicant was in good health or that a premium had been paid, and (b) as a matter of law there could be no constructive delivery of the policy under the circumstances of this case. Plaintiff resisted these motions, and made no motion for directed verdict on her own behalf. It was part of plaintiff's contentions that the applicant's belief in his sound health was all that was required under the "sound health" provision of the application.

17. Defendant's motions for a directed verdict were denied, the denial of the latter motion being made in the light of Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which is in effect a reservation for a later determination of the legal questions raised by the motion.

18. The case was submitted to the jury for special findings on eight issues of fact, under Rule 49 of the Rules of Civil Procedure. The questions and the answers returned by the jury are as follows:

| Questions | Answers |
|---|---|
| 1. Was Mr. Ratigan in sound health at any time between May 21, 1937, and his death on June 12th? | Yes. |
| 2. Was Mr. Ratigan in sound health at any time between June 8 and June 12, 1937? | Yes. |
| If the answer is "Yes", on what date or dates? | 8–9th June, 1937. |
| 3. At the time Mr. Ratigan signed the Application for the insurance sued for, was Mr. Ratigan then in sound health as far as he knew and believed, within the provisions of the Application and medical examination? | Yes. |
| 4. Did Mr. Ratigan pay the first premium required by the application? | No. |
| 5. Was the first premium required by the application paid? | No. |
| 6. If the first premium was paid, on what date was such payment made? | ——— |
| 7. Did Mr. Ratigan apply for the insurance in question and agree to pay the proper premium which would apply according to his age at the time the Application would be approved by the Company? | Yes. |
| 8. Did Mr. Ratigan and Mr. Schulte agree that the annual premium was $154.10? | Yes. |

### Conclusions of Law

1. This being a controversy involving more than $3,000, exclusive of interest and costs, between citizens and residents of different states, this court has jurisdiction. 28 U.S.C.A. § 41(1).

2. There having been no unconditional delivery of the policy with a premium paid while the applicant was in sound health within the meaning of the policy, no contract of insurance was ever consummated. Bowen v. Prudential Ins. Co., 178 Mich. 63, 144 N.W. 543, 51 L.R.A.,N.S., 587; Wells v. Prudential Ins. Co., 239 Mich. 92, 214 N.W. 308; Lawrence v. Connecticut Mutual Life Ins. Co., 6 Cir., 91 F.2d 381; see note, 53 A.L.R. 492.

3. Judgment of no cause of action shall be entered in favor of defendant and against plaintiff, with costs taxable as a matter of course under Rule 54, Rules of Civil Procedure.