FOWLER *v.* UNITED BENEFIT LIFE INS. CO.

1. INSURANCE—COMPANION COMPANIES—SEPARATE POLICIES.
   In action at law by beneficiary under a life insurance policy to recover the face value thereof, court's action in striking from amended declaration paragraphs relating to alleged illegal sale of a health and accident policy in a separate corporate entity officered by same individuals as defendant and in which it was claimed premiums paid on such void policy should be credited upon valid life insurance policy in defendant, a companion company, was proper.

2. SAME—EXPIRATION OF GRACE PERIOD—ACCEPTANCE OF SUBSEQUENT PAYMENT AT HOME OFFICE.
   Beneficiary under life insurance policy would not be entitled to maintain an action for face value thereof where last payment which was attempted to be made after expiration of period of grace and during insured's lifetime was admittedly not accepted at home office prior to insured's death.

3. SAME—LIFE INSURANCE—UNEARNED PREMIUMS.

Fact that a prior life insurance policy with defendant had a cash value in unearned premiums greatly in excess of amount of premium due on life insurance policy sued upon would not impose duty upon insurer to prevent a forfeiture of policy sued on by applying toward payment of premium thereon unearned premiums from prior policy.

4. DISMISSAL AND NONSUIT—RECORD—PLEADINGS—STATEMENT OF COUNSEL.

Dismissal of action with prejudice before jury was impanelled was proper and not premature where from the record containing declaration as amended and statements made in an extended colloquy between court and plaintiff's counsel it does not appear that plaintiff had set forth a legally sustainable cause of action even though her contention were sustained by evidence in every particular.

5. INSURANCE—PAYMENT OF PREMIUMS—DEFAULT—FORFEITURE—EXTENSION OF TIME.

Under life insurance policy providing that quarterly premiums were payable in advance, would be forfeited upon default in payment, that insurer would loan money thereon after three years' premiums had been paid, where premiums had not been paid for a period of three years and current quarterly premium was not paid before insured's death and the policy had no cash or surrender value, failure to pay premium worked a forfeiture unless there was such an extension of time for the payment of premiums as would justify a finding that the policy was in force and effect at the time of insured's death.

6. SAME—PREMIUM EXTENSION AGREEMENT.

Under life insurance policy requiring quarterly payment of $28.18 in advance at insurer's home office where a payment was due on February 18th and on date grace period expired insured paid $12.18 to insurer's local agent under premium extension agreement that it would continue policy in force until April 2d at which time policy would be forfeited unless premium be then paid and on April 3d, the previous day being Sunday, insured paid $5.15 to the local agent who receipted for it subject to its acceptance at home office and latter payment was not accepted at home office before insured died on April 9th, beneficiary could not recover on policy since it was not in effect at time of insured's death; it not being within the province of the court to reform or make a new contract for the parties.

7. SAME—HEALTH AND ACCIDENT POLICY—APPROVAL—COMPANION COMPANIES.

Insurer under life insurance policy issued on same date as health and accident policy was issued by a separate corporate entity officered by the same individuals and represented by the same local agent was not obligated to apply premiums for health and accident policy to life policy to prevent forfeiture of latter because of nonpayment of premiums, on theory that health and accident policy was void because form thereof had not been filed and approved by the State insurance commissioner, as there was still a valid contract between insured and insurer under that policy (3 Comp. Laws 1929, § 12447).

8. SAME—LIFE INSURANCE—TWO POLICIES WITH SAME COMPANY. INDEPENDENT CONTRACTS—FORFEITURE.

In view of loan provisions in life insurance policy sued upon which had been forfeited prior to death of insured for nonpayment of premiums and same provision in previously issued policy by same insurer in force at time of his death, insurer was not obliged to debit prior policy with amount due from insured on later policy to prevent forfeiture thereof.

9. SAME—COST OF POLICY—PREMIUMS—EXPIRATION OF GRACE PERIOD—KEEPING POLICY IN FORCE.

An insured is not entitled to be credited with the difference between the cost of a life insurance policy to the insurer and the premiums paid by the insured in order that the policy may be kept in force after the expiration of the period of grace and prevent forfeiture.

10. SAME—FRAUD—LIFE INSURANCE—STIPULATIONS—STATUTES.

In the absence of fraud, an insurer and an insured under life insurance policies can provide stipulations in their contracts not inconsistent with State statutes and such stipulations are enforceable.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 17, 1941. (Docket No. 98, Calendar No. 41,674.) Decided January 5, 1942.

Assumpsit by Mable Fowler against United Benefit Life Insurance Company on a policy issued to her husband, William B. Fowler, deceased. From order granting motion to dismiss, plaintiff appeals. Affirmed.

*John H. Dohrman* and *Curtis D. Wernette,* for plaintiff.

*Clifford M. Toohy,* for defendant.

Chandler, C. J.   On November 18, 1936, defend, ant, United Benefit Life Insurance Co., issued its policy No. C-157567 insuring the life of William B. Fowler for the benefit of his wife, Mable Fowler, plaintiff and appellant herein.   The amount of life insurance purchased by this contract was $2,500, and the policy provided for the payment of quarterly premiums by the insured to the company of $28.18 on February 18th, May 18th, August 18th and November 18th of each year.

The premiums on this policy were paid to February 18, 1939, but the premium due on February 18, 1939, was never paid.   There was a grace period on this policy of 31 days and this expired on March 20, 1939.

On March 20, 1939, the insured paid to one Earl B. Brink, local agent for defendant, the sum of $12.18 for the purpose of continuing said policy in force until April 2, 1939, and executed the following so-called "premium extension agreement:"

"First—That if said interest and premium be not paid on said date [April 2, 1939] said policy shall be forfeited and void except as otherwise provided by its terms.

"Second—That no portion of said premium has been paid and that the remittance herewith made you shall be held by you until the end of the extension period to be then subject to my order if I have then paid said premium in full, but to be retained by you in the event of my failure to do so.

(Signed) William B. Fowler."

April 2, 1939, fell on a Sunday.   On April 3, 1939, the insured paid to said Earl B. Brink, defendant's

agent, $5.15 and received a conditional receipt in words and figures as follows:

"Policy No. C-157567.          Premium Received $5.15.
                    Date Paid 4/3/39
  "This is an acknowledgment to W. B. Fowler that I have on this date received premium in the amount above written, on this policy.  Inasmuch as I have not been furnished with official receipt for this premium, this receipt is conditional, and the premium is subject to acceptance at the home office of the United Benefit Life Insurance Company, Omaha, Nebr.

                                E. B. BRINK,
                                     M.E.,
                                       Agent."

After the receipt of the extension agreement under date of March 20, 1939, referred to above, the defendant wrote to the insured the following letter:

"Mr. Wm. B. Fowler,
    Detroit, Mich.
  "The agreement extending the time for payment of the premium due February 18, 1939, on your policy C-157567 will expire April 2, 1939.
  "In accordance with your agreement and to keep your insurance in continuous good standing, please be sure your remittance is made on or before April 2, 1939.  Also enclose this notice with your remittance to the company and notify us if your address is not correct.

|              |         |
| ------------ | ------- |
| Premium      | $42.18  |
| Interest     | .15     |
| Total        | $42.33  |
| Less deposit | 12.18   |
| Amount due   | $30.15  |

Counsel for appellant makes no claim that the sum of $5.15 paid to defendant's agent by the insured on April 3, 1939, was accepted by the home office of defendant prior to the death of the insured, which oc-

curred on April 9, 1939, and admits that said sum was returned by defendant.

The policy in suit contained the following provisions relative to the payment of premiums, grace in payment of premiums, and reinstatement:

"Payment of premiums—All premiums or instalments thereof are due and payable in advance at the home office of the company in the city of Omaha, Nebraska, or to a designated agent on or before date due, but in any case, only in exchange for the company's receipt therefor, signed by the president, secretary or treasurer of the company and countersigned by such agent. Upon default in payment of any premium, this policy shall be null and void and all premiums forfeited to the company, except as herein provided. Premiums may be paid in advance in semi-annual or quarterly instalments at the company's rates therefor. The payment of any premium or instalment thereof shall not maintain the policy in force beyond the date when the next premium or instalment thereof is payable, except as provided herein.

"Grace in payment of premiums—A grace of 31 days (without interest) will be granted for the payment of every premium or instalment thereof after the first premium or instalment thereof during which time this policy shall remain in force.

"Reinstatement—At any time after any default in premium payment, upon written application by the insured and presentation at the home office of evidence of insurability satisfactory to the company, this policy, unless previously surrendered for its cash value, may be reinstated upon the payment of arrears of premiums with compound interest thereon at the rate of six per cent. per annum, and the payment or reinstatement of any indebtedness to the company existing at the date of such default with interest from that date."

Said policy also contained the following provisions relative to policy contract and to loans:

"Policy contract—This policy and the application therefor, taken together, constitute the entire contract between the parties hereto. No change or modification may be made, nor shall any forfeiture be waived or the date of payment of any premium be changed, except by consent of the company duly recorded by written indorsement hereon over the signature of its president or secretary; and the company shall not be bound by any promise or representation affecting this contract made at any time by any person other than the above mentioned officers of the company. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties and no such statement made by the insured shall avoid this policy unless it is contained in the written application therefor, copy of which is attached hereto.

"Cash loans—After three full years' premiums have been paid, the company, at any time while this policy is in force, provided no premium be in default more than 31 days, will loan to the insured within 60 days from the date of written application for such loan, on the execution of a proper loan agreement and on proper assignment of this policy, and on the sole security hereof, any sum not exceeding the amount stated in the table of guaranteed values for the end of the current policy year. From such loan value there will be deducted any existing indebtedness to the company on account of or secured by this policy and any unpaid balance of the premium for the current policy year. Interest in advance at the rate of six per cent. per annum will be collected on the loan to the end of the current policy year. Interest on the loan at the same rate will be due and payable annually in advance thereafter, and if not so paid, will be added to the principal and bear the

same rate of interest. Failure to repay any such loan, or to pay interest thereon when due, shall not void the policy unless the total indebtedness to the company on the policy shall equal or exceed the loan value of the policy at the time of such failure, in which case the policy shall immediately cease and become void 31 days after notice shall have been mailed by the company to the last known address of the insured and of the assignee of record at the home office, if any.''

It further appears from the record that upon the same date that the policy in suit was issued, the insured had issued to him a health and accident insurance policy No. TP5SF-7470, which was issued by the Mutual Benefit Health & Accident Association, on which the annual premium was $56 and the quarterly premium $14.

Mr. Brink, above referred to, represented both of these companies and delivered the two policies in one envelope or jacket, which clearly set forth the names of the two companies, the numbers of the policies and the premiums to be paid on each policy, and inasmuch as the policies bore the same date, the premiums were made payable on identical dates, and the premiums in both instances were paid at the same time to the same agent. However, though it fairly appears that the two companies were officered by the same individuals, they were two separate corporate entities, engaged in different businesses and in the making of different and separate contracts.

It further appears from the record that the defendant on March 28, 1930, had issued to the insured its life insurance policy, number 28691, for $2,000 on which the insured had paid his premiums up to the time of his death, and that he had obtained upon said policy certain loans, and that upon the death of the insured the amount of insurance due under the terms of the said policy, less the amount of the loans

obtained by the insured, was paid to the beneficiary, the plaintiff in the instant case.

We do not consider either the health and accident policy, or the last described life policy, material to the issues in this case, but deem it advisable to make the foregoing statement relative to said policies, and the terms thereof, because of certain claims made by the appellant, both in the court below and upon this appeal. The provision relative to cash loans is the same as in the policy in suit.

The original declaration in this case contained two counts, one being upon the policy in suit, No. C-157567, in which it is alleged that said policy was in force at the time of the death of the insured. Count two was upon the common counts, but it clearly appears that recovery was sought under said count on the policy referred to in count one of the declaration.

The plaintiff demanded a trial by jury and the case came before Judge Vincent M. Brennan for trial on October 15, 1940.

At that time the court made the following request of counsel for plaintiff:

"*The Court:* Mr. Dohrman, I would like to have you make a preliminary opening statement in the absence of the jury so you may acquaint me with the plaintiff's theory. Then when you have finished, I will have opposing counsel make a similar statement, and if there are any questions which should be determined before the jury is brought in, we will undertake to determine them. Just tell me the general nature of this lawsuit, how much you are suing for, and so forth. I have read the declaration. Then I will have some idea of the nature of the controversy."

It appeared from the statement made by counsel in response to this request by the court that the plaintiff was insisting that the payment of $5.15

made on the 3d day of April, 1939, continued the policy in question in force until a date subsequent to the death of the insured. In the alternative plaintiff claimed that the health and accident policy above referred to was a void policy and that the moneys that the insured had paid in premiums had been unlawfully exacted from the insured by the company, that the two companies, the life insurance company and the health and accident company, were companion companies, were in effect one and the same, and that the moneys that the insured had paid for premiums on the health and accident policy to Mr. Brink, the agent for the two companies, should have been credited upon the valid policy, namely the life insurance policy.

Plaintiff made the further claim in the alternative, namely, that the life insurance policy, which had been in force since 1930, had, at the time of the claimed forfeiture of the policy in suit, a cash surrender value of several hundred dollars, and that it was the duty of the defendant to prevent a forefeiture of the latter policy by applying sufficient of said funds to the payment of premiums on the policy in suit to prevent forfeiture.

After the plaintiff had made the statement of his claims as above outlined, the court determined that plaintiff's declaration was not sufficient to permit testimony of plaintiff's claims on the last two theories, and adjourned the case, over the objection of defendant, to give counsel for plaintiff an opportunity to file an amended declaration.

Plaintiff filed an amended declaration incorporating therein the theories he had outlined, and above set forth, and the case again came on for trial on November 26, 1940. At that time the attorney for defendant moved to strike from plaintiff's amended declaration the paragraphs relating to the alleged

illegality of the sale of the health and accident policy by the Mutual Benefit Health & Accident Association, which motion was granted by the court as it should have been. See *Gledhill* v. *Fisher & Co.,* 272 Mich. 353 (102 A. L. R. 1042).

The trial court then stated:

"Now that brings us to the second point regarding what efficacy, if any, the payment of $5.15 had on April 3, 1939. This receipt entitled a receipt for premium, expressly states that the $5.15 is subject to the acceptance of the home office. Counsel for the plaintiff advises me that he is not in position to prove that this payment was accepted by the home office prior to the death of the insured. As a matter of fact, it apparently is conceded that it was never accepted by the home office. It is my view that that being so, plaintiff may not maintain a theory based upon this payment of $5.15. That, therefore, eliminates two of the possible theories upon which the plaintiff proceeds.

"Now, I would like to have Mr. Dohrman state what remaining theory there is in the case upon which the plaintiff hopes to prevail. I would like to have Mr. Dohrman make an opening statement as to what he hopes to prove. Of course, if there is no legal basis for it, I will have to dismiss the case. If he has a legal basis for a case, in my opinion, then he can restate it after the jury comes in."

Counsel for plaintiff then contended that plaintiff was prepared to show that the cost of the life insurance policy in suit to the defendant was approximately $58 per annum and that the defendant by exacting and receiving quarterly annual premiums of $28.18 for upwards of two years had built up in unearned premiums a fund which the insured could have demanded on cancellation of the policy, and which represented a figure greatly in excess of the amount that was owing by the insured for premiums

on the policy in suit. Furthermore, that the other life insurance policy which the insured had with defendant had a cash value in unearned premiums greatly in excess of the amount of the premium due on the policy in suit, and that it was the duty of the insurer to keep in force such policy and thus prevent a forfeiture by applying on the premiums on this policy some of the unearned premiums on the other life insurance policy. The trial court very properly held that plaintiff was not entitled to maintain an action against the defendant based on either of said three theories.

The defendant, after plaintiff's statements as above outlined, moved for a dismissal of the suit with prejudice, for the reason that plaintiff's declaration as supplemented by the opening statement of her counsel, and the declarations and admissions made therein, did not set forth any facts which would justify the maintenance of a cause of action against the defendant. The trial court granted defendant's motion and it is from this determination that plaintiff appeals.

Plaintiff's statement of questions involved, though not numerous, are somewhat involved, but her counsel in his brief has, we think, fairly and concisely stated his contention in the following language: "The verdict of dismissal should have rested upon the evidence or want of evidence and not upon the opening statement of counsel."

In effect it is the contention of plaintiff that even if she had no cause of action, that the act of the trial judge in the dismissal of the case was premature, and that said court should have permitted the impaneling of a jury, let appellant make her opening statement and then entertained defendant's motion to dismiss. This we will concede, as contended by plaintiff, has been the usual practice. However, many

unusual things are done in the trial of cases, but this does not necessarily mean that such unusual procedure is not correct.

In the case of *Parkyn* v. *Ford,* 206 Mich. 576, the trial court by the interrogation of counsel ascertained that no facts were in dispute, and that under the facts as conceded by plaintiff's counsel, the plaintiff was not entitled to maintain an action and directed a verdict for defendant. The plaintiff in that case on appeal made similar contentions to those of the plaintiff in the instant suit. This court said at page 581:

"The trial court interrogated counsel to some extent as to the identity of the causes of action, and this was done for the purpose of shortening the trial and avoiding a long record. The trial court is to be commended for his effort in that direction. We are of the opinion that the verdict was properly directed."

In the instant case after an extended, colloquy between court and counsel, it was made to appear to the trial court, and from the record it is clearly apparent to this court, that if the plaintiff's contention there was sustained in every particular by the evidence, that the plaintiff was not entitled to a recovery, and under such circumstances we are inclined to repeat what we said in *Parkyn* v. *Ford, supra,* that "the trial court is to be commended for his effort" to save time and expense by entertaining defendant's motion to dismiss, based on the statements of counsel for plaintiff, and in the dismissal of said cause.

The desire of the trial court, as appears from the record, to give to counsel for plaintiff every opportunity to state a set of facts which would justify the submission of the case to a jury is indicated by the following statement of the court:

"I have every sympathy for the lady. I would like to see her get her insurance, and I think it very unfortunate. If there is any possible theory upon which the case could be submitted to the jury, I would certainly want to do it, but there is no use wasting the time of the court chasing rainbows or trying to evolve interesting theories which have no foundation in law."

In *Cyrowski* v. *Wojcik*, 280 Mich. 476, we held that a motion to dismiss in the nature of a demurrer can be used to try the merits and issues of fact where counsel makes admissions in the record at the time of the hearing on the motion to dismiss. In the instant case appellant, in addition to her declaration, was given an opportunity to explain and amplify her case to the court in a manner similar to an opening statement. The facts were conceded by defendant. Appellant attempted to draw legal conclusions from the facts which the court determined were without merit. Even thus, in the instant case, the declaration as amplified and supplemented by the statement of plaintiff's counsel did not set forth a legally sustainable cause of action.

Plaintiff's counsel conceded that the premiums on the policy in suit had not been paid for a 3-year period. We must, therefore, hold that under the terms of the policy, as hereinbefore outlined, it had no cash or surrender value, and the failure to pay premiums in accordance with the terms of the policy contract worked a forfeiture thereof unless there was such an extension of the time for the payment of said premiums as would justify a finding that the policy was in force and effect at the time of the death of the insured. These parties made their own extension agreement as hereinbefore set forth and, unless we are to reform or make a new contract for them, we must hold that this policy was not in effect

at the time of the death of the insured. See *Johnson v. National Life & Accident Ins. Co.*, 257 Mich. 335, where this court said:

"There is no question but that the policies had lapsed for nonpayment of premiums. There is no question but that no application for reinstatement of the insurance was subsequently made.. Under such circumstances, the policies provide they are to lapse, be canceled, and become void. This is the contract. *We cannot reform it or make a new contract for the parties.* A lapsed policy, one that is forfeited, is no longer in force. The contract relations between the policy holder and the insurer cease when the policy lapses. No recovery can be had upon a policy where no contractual relation exists."

The contention of the plaintiff that the payments made on the health and accident policy in another company should have been applied upon the policy in suit because said health and accident policy was void has no merit. It was plaintiff's contention that the health and accident company had failed to comply with the provisions of the statute in that the form of said policy had not been filed and approved by the insurance department of the State of Michigan. Accepting plaintiff's statement as true that the policy had not been filed and approved by the insurance commissioner there was still a valid contract between that company and the insured under the provisions of 3 Comp. Laws 1929, § 12447 (Stat. Ann. § 24.283), which provides:

"A policy issued in violation of this chapter shall be held valid but shall be construed as provided in this chapter and when any provision in such policy is in conflict with any provision of this chapter the rights, duties and obligations of the insurer, the policyholder and the beneficiary shall be governed by the provisions of this chapter."

The contention of appellant that the defendant had the right, and that it was its duty, to debit the 1930 policy of the insured with the amount due from the insured in premiums on the policy in suit is without merit. To repeat this contention shows its speciousness. A reference to the loan provisions of both the policy in suit and the former policy shows the fallaciousness of this argument. This can also be said of the further contention of the plaintiff that the insured was entitled to be credited with the difference between the contended cost of the policy in suit to defendant, and the amount of premiums paid by the insured.

The provisions of the policy in suit are free from ambiguity. There is nothing ambiguous about the premium extension agreement hereinbefore quoted and signed by the insured. Nothing ambiguous about the letter from the insurer to the insured extending time for the payment of the premium due February 18, 1939, and advising the insured that the time for the payment of the balance of said premium expired April 2, 1939. Neither is there any ambiguity in the receipt given by the local agent of the insurer to the insured for the amount paid by the insured on April 3, 1939, and if this court is to follow its former decisions, that in the absence of fraud the insurer and insured can provide stipulations in their contracts not inconsistent with the statutes of this State and that such stipulations are enforceable, we must hold here that the policy in suit had been forfeited before the death of the insured for nonpayment of premium and that plaintiff cannot recover. See *Johnson* v. *National Life & Accident Ins. Co.,* *supra; Wells* v. *Prudential Insurance Co.,* 239 Mich. 92; *Bowen* v. *Prudential Insurance Co.,* 178 Mich. 63 (51 L. R. A. [N. S.] 587); *Kapralian* v. *Central Life Ins. Co.,* 276 Mich. 85.

We hold as a matter of law that appellant's declaration, as amplified and supplemented by the remarks of counsel for plaintiff in the nature of an opening statement, did not present any questions of fact for a jury to ponder, nor did it state a legal cause of action, and the judgment of the trial court is affirmed.

Defendant will recover costs.

BOYLES, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.